**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **JOSEPH HOBBS and DRAKE FEENEY,** | § | |
| **individually and on behalf of all others** | § | |
| **similarly situated,** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **MO:17-CV-00030-DC** |
| | § | |
| **PETROPLEX PIPE AND** | § | |
| **CONSTRUCTION, INC.,** | § | |
| *Defendant*. | § | |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

On September 4, 2018, the Court conducted a bench trial in this case, concerning whether Defendant Petroplex Pipe & Construction, Inc. failed to pay Plaintiffs Joseph Hobbs and Drake Feeney, individually and on behalf of all others similarly situated, wages in accordance with the Fair Labor Standards Act. After careful consideration, the Court makes the following findings of fact and conclusions of law, as required by Rule 52(a) of the Federal Rules of Civil Procedure.

## I.    BACKGROUND

Plaintiffs brought this lawsuit against Defendant pursuant to the Federal Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, which requires employers to pay employees at least one and one-half times the regular rate for hours worked in excess of forty hours per week. *See* 29 U.S.C. 207(a)(1); (Doc. 1). According to Plaintiffs, Defendant violated 29 U.S.C. § 207 by requiring that Plaintiffs work an excess of forty hours per week during one or more weeks of employment and not compensating them at the statutory rate of one and one-half times the regular rate for those hours worked in excess of forty hours per work week. (Doc. 1 at 7). Instead, Defendant classified Plaintiffs as independent contractors and paid them at a straight time hourly rate. *Id.* at 6. Plaintiffs further maintain that Defendant's actions were willful and/or

showed a reckless disregard for the provisions of the FLSA. *Id.* at 9. Defendant counters that Plaintiffs are not "employees" of Defendant as that term is defined and interpreted under the FLSA. (Doc. 9 at 10). Thus, Defendant was under no obligation to pay Plaintiffs at the statutory rate of one and one-half times the regular rate for those hours worked in excess of forty hours per work week. *Id.* Finally, Defendant argues that Plaintiffs failed to offer evidence that shows Defendant acted willfully in violation of the FLSA. *Id.*

The parties agree that Defendant is subject to the FLSA and to the applicable damages, should Defendant be found liable. Thus, this case turns on whether there was an employer-employee relationship between the parties, and, if so, whether Defendant acted in willful violation of the FLSA.

## II.    STIPULATED FACTS

Plaintiffs and Defendant stipulated to the following facts:

1. Defendant is an oilfield contractors services company located in Midland, Texas.

2. Defendant is subject to the FLSA.

3. Defendant is an enterprise engaged in commerce as defined by the FLSA.

4. Defendant has been in business for thirty years.

5. Defendant is owned by JoAnn Bridges.

6. TR Bridges is Defendant's President.

7. Benjamin Humphrey (Humphrey) was hired in February 2014 as a W-2 employee with the job duties of a welder helper. Humphrey was paid overtime at time and a half his regular rate when he was a welder helper. Humphrey became a contracted welder in or around August 2014 and held that position until February 2015. Humphrey was not paid

overtime when he worked as a welder because Defendant hired Humphrey as an independent contractor.

8.  Plaintiff Joseph Hobbs (Hobbs) worked for Defendant from February 2014 to January 2017.

9.  Plaintiff Drake Feeney (Feeney) worked for Defendant on two separate occasions, a 6-month period and a 4-month period.

(*See* Doc. 80; *see also* Trial Tr. 7:19–7:23).

10. The parties agree on the hours worked during the relevant workweeks and the money paid to Plaintiffs during those workweeks.

11. The parties agree that depending on (a) the Court's determination regarding independent contractor versus employee status; (b) the Court's determination regarding the inclusion or not of the "per diem" in the "regular rate;" and (c) the Court's determination on whether a two-year or three-year statute of limitations applies, the following chart accurately lists the Plaintiffs' alleged damages.

| Without Per Diem in Regular Rate | | |
|---|---|---|
| **HOBBS** | **Two-Year Statute of Limitations** | **Three-Year Statute of Limitations** |
| | $41,910.00 | $74,130.00 |
| Liquidated Damages | $41,910.00 | $74,130.00 |
| **TOTAL** | **$83,820.00** | **$148,260.00** |
| | | |
| **FEENEY** | **Two-Year Statute of Limitations** | **Three-Year Statute of Limitations** |
| | $8,890.00 | $33,530.00 |
| Liquidated Damages | $8,890.00 | $33,530.00 |
| **TOTAL** | **$17,780.00** | **$67,060.00** |
| | | |
| **HUMPHREY** | **Two-Year Statute of Limitations** | **Three-Year Statute of Limitations** |
| | - | $17,320.00 |
| Liquidated Damages | - | $17,320.00 |
| **TOTAL** | **-** | **$36,640.00** |

| | | |
|---|---|---|
| **TOTAL** | **$101,600.00** | **$249,960.00** |

| With Per Diem in Regular Rate | | |
|---|---|---|
| **HOBBS** | **Two-Year Statute of Limitations** | **Three-Year Statute of Limitations** |
| | $46,970.90 | $82,751.73 |
| Liquidated Damages | $46,970.90 | $82,751.73 |
| **TOTAL** | **$93,941.80** | **$165,503.47** |
| | | |
| **FEENEY** | **Two-Year Statute of Limitations** | **Three-Year Statute of Limitations** |
| | $9,947.46 | $37,100.13 |
| Liquidated Damages | $9,947.46 | $37,100.13 |
| **TOTAL** | **$19,894.92** | **$74,200.25** |
| | | |
| **HUMPHREY** | **Two-Year Statute of Limitations** | **Three-Year Statute of Limitations** |
| | - | $19,267.79 |
| Liquidated Damages | - | $19,267.79 |
| **TOTAL** | **-** | **$38,535.59** |
| | | |
| **TOTAL** | **$113,836.72** | **$278,239.31** |

(*See* Doc. 106; *see also* Trial Tr. 302:1–302:10).

### III.    FINDINGS OF FACT

The Court finds the following by a preponderance of the evidence:

1.  During the relevant time period, Defendant provided pipe welding and fabrication services primarily to its customer Pioneer. Defendant also provided other types of services, such as roustabout work, treatment of produced oil at the customer's facilities, dirt work, ditching, pipe installation, environmental cleanup, and NORM cleanup.

2.  During the relevant time period, all of the Plaintiffs worked exclusively for Defendant as welders. Plaintiffs could be called at any time during the day to complete emergency jobs

for Defendant. Plaintiffs provided their services to Pioneer only by virtue of their relationship with Defendant and under Defendant's Master Services Agreement with Pioneer.

3. Defendant hired Plaintiffs to complete all welding work for Defendant and moved Plaintiffs to subsequent projects once Plaintiffs completed an assigned project.

4. Plaintiffs became certified welders and took various tests at the direction of Defendant to stay up to date with Pioneer's certification requirements. Defendant paid for Plaintiffs' welding certifications—those required by Pioneer—and for hours Plaintiffs spent completing the tests to become certified pipe welders.

5. Defendant trained Plaintiffs to drive a forklift and paid Plaintiffs for hours they spent training on how to operate a forklift.

6. While working for Defendant, Plaintiffs completed pipe-welding, structural welding, maintenance jobs, and occasionally drove forklifts. However, Plaintiffs worked primarily as pipe welders.

7. Pioneer, not Defendant, dictated the specific welding procedures, provided diagram schemes for Plaintiffs to use while completing their respective projects, and owned the pipe the Plaintiffs welded on.

8. A third-party company employed by Pioneer inspected Plaintiffs' welding.

9. Defendant assigned Plaintiffs welding work with Pioneer and maintained daily time records for each Plaintiff that it would then bill to Pioneer. On some occasions, such as on hard bid jobs, Defendant tracked Plaintiffs hours but did not bill Pioneer on an hourly basis.

10. Plaintiffs took the same break and lunch times as Defendant's employees and were required to work between 7:00 a.m. and 5:00 p.m. At times, Plaintiffs were required to stay after 5:00 p.m. Plaintiffs did not think they could refuse a job or leave early out of fear of being replaced or terminated. If Plaintiffs were late, they were sent home.

11. Plaintiffs were disciplined by Defendant for not complying with Pioneer's requirements. For example, Plaintiffs were sent home if they failed to wear safety gear.

12. Plaintiffs supplied their own trucks, welding machines, and several specialized welding tools, such as beveling machines, grinders, torches, torch hoses, leads, jack stands, hand tools, levels, and squares. Plaintiffs were also accountable for their meals and housing.

13. Defendant paid for and supplied consumables, such as oxygen, acetylene for coating, welding rods, buffing wheels, grinding disks, face shields, and sanding pads. The type of consumables required was dictated by Pioneer. Additionally, Defendant provided the forklift needed to move pipes and other items at the project site.

14. Defendant also hired welder helpers to assist Plaintiffs, some of which were suggested by Plaintiffs, and, once hired, assigned the welder helpers to projects.

15. Defendant paid Plaintiffs a fixed hourly rate of $80 or $70, depending on the year, plus a $100 per diem as reimbursement for fuel and to compensate Plaintiffs for using their welding equipment and trucks. The $100 per diem was agreed to by the parties based on the industry standard. Plaintiffs were not required to turn over expenses to justify the per diem payment. Plaintiffs were also paid an hour to drive to a location and an additional hour to drive from a location regardless of the length of the actual drive.

16. Although Defendant did not expressly prohibit Plaintiffs from taking other jobs while working for Defendant, realistically the work schedule established by Pioneer via Defendant precluded Plaintiffs from working on other jobs.

17. Plaintiffs were required by Defendant to attend safety meetings, together with Defendant's employees, and complete job safety analysis tickets. Plaintiffs were also required to submit to random drug testing. Plaintiffs were paid for the time spent at safety meetings and completing drug tests.

18. During the relevant time period, Plaintiffs classified themselves as self-employed on their income tax returns.

19. Sam Hardcastle (Hardcastle), also a welder, with the consent of Defendant—and at its initial direction—assigned tasks to Plaintiffs based on Pioneer's (and other customers) needs and based on Defendant's obligations under its contract with Pioneer, disciplined Plaintiffs when they arrived late, and provided more simplified diagrams instructing Plaintiffs how to complete welds required under the Master Service Agreement. Hardcastle's role was institutionalized over time and with T.R. Bridges' initial direction regarding how to manage the welders and Defendant's obligations to its customers and after Hardcastle gained the expertise necessary to oversee Defendant's duties under its contracts. T.R. Bridges was aware of Hardcastle's role among the welders.

20. Defendant initially hired welders as employees but reclassified them as independent contractors.

21. All findings of fact that are more properly considered to be conclusions of law are also adopted by the Court as conclusions of law.

### IV.    CONCLUSIONS OF LAW

1. The Court has jurisdiction over this action. 28 U.S.C. § 1331; 29 U.S.C. § 201, *et seq.*

2. Plaintiffs present a claim for damages under 29 U.S.C. § 201, *et seq.*

3. The Court has personal jurisdiction over the parties to this action.

4. Under the FLSA "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employee seeking to recover for unpaid overtime compensation must show by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *See, e.g.*, *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir.2005) (citing *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)). "Each element must be proven by a preponderance of the evidence." *Parrish v. Premier Directional Drilling, LP*, No. 17-51089, — F.3d —, 2019 WL 973091, at *5 (5th Cir. Feb. 28, 2019) (citing *Johnson v. Heckman Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014)).

5. The Court finds by a preponderance of the evidence that Defendant is an enterprise engaged in commerce as defined by the FLSA and that Plaintiffs were engaged in activities within the coverage of the FLSA. 28 U.S.C. § 203.

**A. Employer-Employee Relationship**

6. Under the FLSA, the definition of "employee" is especially broad. *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). Whether a worker is an employee depends on "whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Id.* Courts examine five non-exhaustive factors when determining whether a worker is an employee, including: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id.* No single factor is determinative. *Id.*

7. Moreover, "the factors should 'not be applied mechanically.'" *Parrish*, 2019 WL 973091, at *5 (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043 (5th Cir. 1987)). Rather, the Court should assess the "'economic dependence' of the putative employees, the touchstone for this totality of the circumstances test." *Brock*, 814 F.2d at 1311. Thus, it "is not what [plaintiffs] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive." *Id.* at 1047 (emphasis in original) (citations omitted).

8. **The Degree of Control.** The Court finds by the preponderance of the evidence that the degree of control factor weighs in favor of employee status. Plaintiffs rely on the following factors to evidence that Defendant exercised significant and extensive control over Plaintiffs: (1) Plaintiffs were told where to work, when to start and stop work, and when to take breaks; (2) Plaintiffs were given diagrams detailing how the work should be completed; (3) Plaintiffs were required to attend safety meetings and to complete safety

reports; (4) Plaintiffs were subject to drug testing by Defendant; (5) Defendant required Plaintiffs to be certified and paid for the certification; (6) Plaintiffs did not bid on projects, but were paid on an hourly basis. (Doc. 115 at 8).

9.  As to the facts that Plaintiffs were required to attend safety meetings, complete safety reports, and submit to drug testing, the Fifth Circuit found that such requirements do not signal "the type of control that counsels in favor of employee status" when the job site is hazardous. *See Parrish*, 2019 WL 973091, at *7 (explaining that although whether the workers were subject to random drug testing and safety meetings has been considered by the Fifth Circuit in determining whether an employer exerts control over its employees, the factor was not dispositive in that particular case because the plaintiffs worked in a oil-drilling site).

10. Nonetheless, the evidence shows that Defendant exercised the necessary control such that this factor weighs in favor of employee status. Specifically, the fact that Defendant assigned Plaintiffs to projects and required Plaintiffs to report to work at a particular time or face being sent home as a repercussion is evidence of control that indicates Plaintiffs did not possess "real independence" in the economic relationship with Defendant. *Cf. Parrish*, 2019 WL 973091, at *7 (concluding defendant's control over plaintiffs' work schedule—including plaintiffs shifts and job site—did not weigh in favor of employee status where plaintiffs were *not* required to accept a project, relying on the fact that plaintiffs had previously turned down projects without negative repercussion). Here, Plaintiffs were disciplined if they arrived late. Further, Plaintiff Hobbs was even terminated after he was disciplined for arriving late.

11. Moreover, in the case at bar, Plaintiffs were not only provided a schematic diagram from Pioneer depicting the pipe welding plans, but Plaintiffs were also subsequently provided simplified versions of Pioneer's diagrams with more specific instructions on how to accomplish Pioneer's scheme. In this regard, this case differs from *Parrish* and *Thibault* where the Fifth Circuit found that providing "blueprints" or an "already-designed well plan" did not make the workers employees because it was plaintiffs who had made the plan work. *See Parrish*, 2019 WL 973091, at *7 (evaluating plaintiffs' argument that being provided an already-designed well plan signified defendant exercised significant control over their work); *see also Thibault v. Bellsouth Telecomm., Inc.*, 612 F.3d 843, 848 (5th Cir. 2010) (considering plaintiff's argument that defendants provided him with blueprints). Although Hardcastle testified that any welder could come up with a simplified version of the diagram, it was Hardcastle providing instructions a majority of the time. *See id.* (affirming that what the workers *could* have done is not significant). This fact further persuades the Court that Defendant exercised a significant amount of control over Plaintiffs' work.

12. Finally, Defendant paid and assigned welder helpers to assist Plaintiffs, paid Plaintiffs an hourly rate that was rarely negotiable and assigned Plaintiffs to tasks other than pipe welding when needed. Said facts lean in favor of employee status. *See Faulkner v. Patterson-UTI Drilling Co. LLC*, No. 6:12-CV-104, 2014 WL 12567150, at *2 (E.D. Tex. Jan. 30, 2014) (citations omitted) ("The degree of control factor favors employee status when the alleged employer exerts significant control over the worker, including setting the schedule of days and hours worked, exercising close supervision, dictating how specific tasks should be done, assigning tasks outside of the worker's area of

expertise, requiring workers to wear company uniforms, and being subject to the employer's personnel policies such as drug testing.").

13. Thus, the degree of control factor, when viewed in light of all the evidence, weighs in favor of employee status. *Id.*

14. **Relative Investment.** The Court finds by a preponderance of the evidence that Plaintiffs invested a relatively insubstantial amount in their trucks and welding equipment. Thus, the relative investment factor weighs in favor of employee status. *See Parrish*, 2019 WL 973091, at *8–9 (acknowledging that the Fifth Circuit employs a side-by-side comparison method in evaluating this factor).

15. In *Carrell*, the Fifth Circuit considered the overall investment of the company in the pipeline construction project and compared it to the welders' overall investment in their trucks and equipment. *See Carrell v. Sunland Const., Inc.*, 998 F.2d 330 (5th Cir. 1983) (comparing the alleged employer's overall investment in each pipeline construction project and the supplies, equipment, and services (paying welder helpers) it provided to its welders to use in completing their job to the investment plaintiffs made in their welding equipment). Nonetheless, the Fifth Circuit found that because the factors must be linked to the overall inquiry, the significant overall investment of the alleged employer in each project was not sufficient to outweigh a finding of independent contractor status. *Id.* In another case—*Parrish*—the Fifth Circuit found that given the extent of the employer's investment at a drill site, the relative investment factor weighed in favor of employee status. *See Parrish*, 2019 WL 973091, at *9. However, the court  again held that given the economic reality of the parties' relationship, the fact that the relative investment factor weighed in favor of employee status did not outweigh a finding that the workers

were independent contractors. *Id.* Thus, it is clear that in looking at Defendant's relative investment, the Court must consider its overall investment in the pipe construction project.

16. The Court finds by a preponderance of the evidence that Defendant invested more money in a pipe construction project compared to each Plaintiff's investment. *Id.* Thus, this factor weighs in favor of employee status. *Id.* However, as did the Fifth Circuit, this Court gives little weight to this factor, "in light of the nature of the industry and the work involved." *See Parrish*, 2019 WL 973091, at *8 (placing little weight in the relative investment factor where the plaintiffs worked in the oil and gas industry as directional drillers).

17. **Opportunity for Profit or Loss.** The Court finds by the preponderance of evidence that Defendant controlled Plaintiffs' opportunities for profits by fixing the hourly rate and the number of hours worked. *See Cromwell*, 348 F. App'x at 61 (concluding that the permanency and extent of the parties' relationship and the alleged employer's complete control over the plaintiffs' schedule and pay severely limited the plaintiffs' opportunity for profit or loss). Unlike in other cases, during the relevant time, Plaintiffs' year-end profits or losses did not depend on their ability to find welding work with other companies consistently or other work generally. *See, e.g.*, *Thibault*, 612 F.3d at 848 (considering the fact that the plaintiff worked for three months on a specific project for defendant and that after completing the project plaintiff continued working for his company, generating a substantial amount in profits from the company and from eight drag-race cars he owned in holding plaintiff was not an employee under the FLSA).

Instead, Plaintiffs' profits were dependent on the hours they worked for Defendant and on Defendant's contract with Pioneer and other customers, even when work was slow.

18. Like Defendant's other employees, when the oil and gas industry experienced a bust, Plaintiffs worked fewer hours. Further, Plaintiffs were assigned other welding tasks when work slowed—for example, some Plaintiffs welded prefabricated pieces at Defendant's shop as opposed to being assigned to Defendant's pipe construction projects with Pioneer or other customers. *Cf. Parrish*, 2019 WL 973091, at *9 (finding plaintiffs were independent contractors where they *did not* receive payment from the alleged employer when they were not working on one of its projects even though other employees did). Moreover, Plaintiffs were paid at the same rate despite their level of certification. *Id.* at *10 (weighing the fact that plaintiffs' range of pay varied based on their level of classification in favor of independent contractor status).

19. Based on the foregoing, the Court finds by a preponderance of the evidence that the opportunity for profit or loss factor weighs in favor of employee status.

20. **Skill & Initiative.** The Court finds by a preponderance of the evidence that pipe-welding, such as that performed by the Plaintiffs in this case, requires specialized skills. *See, e.g.*, *Carrell*, 998 F.2d at 330 ("Pipe welding, unlike other types of welding, requires specialized skills."). However, Plaintiffs' initiative was limited to decisions regarding their welding equipment and the detail of their welding work while they were working for Defendant. *Id.* Under Defendant's contract with Pioneer, Plaintiffs were given their work assignments and the specifications to complete their jobs, limiting Plaintiffs need to demonstrate initiative in performing their jobs. *Id.* Hardcastle further provided diagrams simplifying Pioneer's scheme.

14

21. Additionally, Defendant's argument that Plaintiffs had the ability to purchase new or old equipment, chose not to negotiate their pay with Defendant or subcontract their work, and that they could have provided their welding services to other companies is not indicative of initiative. *See, e.g.*, *Parrish*, 2019 WL 973091, at *11 (finding defendant's argument that plaintiffs showed "initiative because they: 'could ask for more money'; could 'advertise their business to and work for [defendant's] competitors'; invested 'in trucks, computers, clothing and equipment'; and managed their own finances efficiently" unpersuasive). "[A]t issue is not what plaintiffs could do, only what they did." *Id.* (citing *Brock*, 814 F.2d at 1047).

22. Because Plaintiffs were highly skilled but did not demonstrate the initiative compelling nonemployee status, the Court finds that the skill and initiative factor is neutral. *Id.*

23. **Permanency of Relationship.** Relevant to the permanency of the parties' relationship is "whether any plaintiff 'worked exclusively' for [Defendant]," "the total length of the relationship" between the parties, and "whether the work was on a 'project-by-project basis.'" *See Parrish*, 2019 WL 971091, at *12. The Court finds by a preponderance of the evidence that Plaintiffs were not hired on a project-by-project basis. Instead, Defendant hired Plaintiffs to meet all of Defendant's welding needs under its contracts with customers and used Plaintiffs to complete emergency maintenance jobs and other welding tasks at Defendant's shop during an industry downturn. *Cf. Parrish*, 2019 WL 973019, at *12 (finding the fact that plaintiffs were not paid or guaranteed they would receive more work during a down-period in the oil and gas industry weighed in favor of independent contractor status).

24. Further, the Court finds by a preponderance of the evidence that Plaintiffs worked on a steady and reliable basis over a substantial period of time, which varied between four months, six months, nine months, and three years. *See, e.g.*, *Cromwell*, 348 F. App'x at 61 (finding eleven months a substantial period of time). *Cf. Carrell*, 998 F.3d at 334 (concluding that working for a company for three to sixteen weeks weighs against employee status).

25. Finally, during the relevant time, Plaintiffs worked exclusively for Defendant. The fact that Plaintiffs could have worked for other companies but chose to continue working for Defendant "is not a relevant concern." *Parrish*, 2019 WL 973091, at *12. "Again, the analysis is focused on economic reality, not economic hypotheticals." *Id.*

26. Although each Plaintiff's time with Defendant varied significantly, the "inferences gained from the length of time of the relationship depend on the surrounding circumstances." *Id.* Further, notwithstanding Plaintiffs' specialized skill set, which could lead to economic independence and thus a less permanent relationship between the parties, Defendant utilized Plaintiffs for jobs that did not require Plaintiffs' pipe welding certification during a downturn in the oil and gas industry. Accordingly, the permanency of the relationship factor, when viewed in light of the economic reality of the parties' relationship, weighs in favor of employee status. *Id.*

27. **Other Factors.** In spite of there being facts that weigh in favor of independent contractor status, such as the fact that Plaintiffs provided their own trucks, welding equipment, and housing, used a high level of skill to complete pipe welding tasks, knew that Defendant classified them as independent contractors, classified themselves as self-employed on tax forms, as a matter of economic reality, these facts are insufficient to show that Plaintiffs

were "in business for themselves during the relevant time." *Cromwell*, 348 F. App'x at 61.

28. Unlike in *Carrell*, where the Fifth Circuit found that the welders were independent contractors, Plaintiffs' relationship with Defendant in this case, was not on a project-by-project basis. *See Carrell*, 998 F.2d at 330. Instead, Defendant employed Plaintiffs to complete all of its pipe welding projects and assigned Plaintiffs to their next welding project upon completion. Moreover, Plaintiffs worked for a substantial amount of time and exclusively for Defendant during the relevant period. Plaintiffs were also removed from pipe welding projects to complete emergency maintenance work in other locations.

29. The fact that some Plaintiffs may have been classified as independent contractors by other companies before or after being employed by Defendant "does not preclude a finding that they exchanged this status" for one that was more secure with Defendant. *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666 (5th Cir. 1983). Similarly, just because Plaintiffs "listed themselves as self-employed on their tax returns... does not tip the balance in favor of independent contractor status," especially "where, as here, the economic realities of the situation indicate that [Plaintiffs] depended upon [Defendant] for [their] livelihood." *Id.*

30. Based on the foregoing analysis of the bench trial evidence and the applicable law, the Court finds by a preponderance of the evidence that Plaintiffs were employees as defined by the FLSA. 28 U.S.C. § 203.

**B. Violation of the FLSA**

31. The Court finds by a preponderance of the evidence that Plaintiffs were Defendants' employees and that Plaintiffs worked more than forty hours per week without compensation for the hours they worked in excess of the forty hours at a rate not less than one and one-half times the regular rate at which they were employed. Instead, Defendant paid Plaintiffs at a straight time hourly rate. Accordingly, Defendant violated the FLSA. *Carmack v. Park Cities Healthcare, LLC*, 321 F. Supp. 3d 689, 699 (N.D. Tex. 2018).

32. **Willful Violation Standard.** Plaintiffs cause of action for unpaid overtime under the FLSA "shall be forever barred unless [they commence a lawsuit] within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Plaintiffs bear the burden of proving that Defendant's violation was willful. *See Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990). A willful violation is established by showing that "the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the [FLSA]." *Id.* (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x. 349, 360 (5th Cir. 2015) (citations omitted).

33. The Court finds by a preponderance of the evidence that Defendant did not willfully violate the FLSA. Plaintiffs failed to show that any complaints were made with regard to Defendant's pay structure and that Defendant failed to or ignored such complaints. *See, e.g., Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 553 (5th Cir. 2009). Plaintiffs also failed to establish that Defendant actually knew that its pay

structure violated the FLSA. *Id.* The fact that Defendant failed to investigate whether it was in compliance with the FLSA, alone, "without prior notice of the alleged FLSA violation does not prove willfulness." *Mohammadi v. Nwabuisi*, 171 F. Supp. 3d 545, 550 (W.D. Tex. 2016), *aff'd*, 673 F. App'x 443 (5th Cir. 2017); *Zannikos*, 605 F. App'x at 360 (finding the employer did not act willfully when plaintiffs failed to present evidence that the employer knew "it was violating the FLSA or recklessly disregarded a potential violation"). Thus, the two-year statute of limitations applies. *Id.*

## C. Per Diem Payments are Not Included in Plaintiffs' Regular Rate of Pay

34. Under the FLSA, employees who work more than forty hours in a workweek must be paid one and one-half times their "regular rate" of pay. 29 U.S.C. § 207(a). "Regular rate" is defined broadly as the hourly rate actually paid to the employee for "all remuneration for employment." *Id.* at (e). Accordingly, the "regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461 (1948). "[A]n employee's regular rate of pay does not include '*reasonable* payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation.'" *Picton v. Excel Group, Inc.*, 192 F. Supp. 2d 706, 711 (E.D. Tex. 2001) (emphasis in original) (citing 29 U.S.C. § 207(e)(2)). "The FLSA permits employers to reimburse employees for '[t]he actual amount expended by an employee in purchasing supplies, tools, materials, or equipment on behalf of his employer." *Id.* at 714 (citing 29 C.F.R. § 778.217(b)(1)).

35. The Court finds by a preponderance of the evidence that the per diem Plaintiffs received was a reasonable reimbursement for the use of Plaintiffs' trucks and welding equipment. *Id.* The per diem was not for Plaintiffs' own benefit. Instead, it benefited Defendant who required Plaintiffs to supply their own trucks, welding equipment, and other materials necessary to weld. Further, the amount of per diem was based on the parties' understanding that such was the industry standard.

36. Consequently, the per diem is not included in Plaintiffs' regular rate of pay. *See, e.g.*, *Berry v. Excel Group, Inc.*, 288 F.3d 252 (5th Cir. 2002) (holding that the per diem was a legitimate, reasonable reimbursement of travel expenses and not excessive despite the employer's policy of paying employees the same per diem regardless of the distance they traveled because the per diem covered expenses incurred for the employer's benefit). *Cf. Mata v. Caring For You Home Health, Inc.*, 94 F. Supp. 3d 867, 875 (S.D. Tex. 2015) (including the per diem payment in the regular rate where the employer promised its employees that they would receive a bonus as part of their wages and where the employees "did not have to do anything beyond work their hours to receive the bonus"). In the case at bar, Plaintiffs had to supply their own welding trucks, welding equipment, and other supplies. They did not simply show up and work their hours to get the per diem as was the case in *Mata* and *Gagnon*. *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (including the per diem in the regular rate where "the amount of per diem [varied] with the amount of hours worked"); *see also Mata*, 94 F. Supp. 3d at 875–76 (finding the per diem was part of the employees' regular rate because the employees were promised a bonus as part of their wages, the employees did not have to do anything

beyond work their hours to receive the bonus, and that employees did nothing but work their hours and received the bonus).

## V.    CONCLUSION

Based on the foregoing, the Court **ORDERS**, pursuant to the parties' stipulation regarding damages (Doc. 106), that judgment be entered in favor of Plaintiffs and against Defendant in the amount of:

(1) $50,800.00 in unpaid wages;

(2) $50,800.00 in liquidated damages; and

(3) Reasonable attorney fees and costs.

It is so **ORDERED**.

SIGNED this 7th day of March, 2019.

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE