# Exhibit A

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| Joseph Hobbs and Drake Feeney, individually and on behalf of all others similarly situated, | § § § § | |
| | § | CA No.: 17-CV-00030-DC |
| Plaintiffs, | § § | |
| v. | § § | Collective Action |
| Petroplex Pipe and Construction, Inc. | § § § | |
| Defendant. | § § | |

## PLAINTIFFS' COUNSEL CHRIS R. MILTENBERGER'S DECLARATION IN SUPPORT OF ATTORNEYS' FEES

My name is Chris R. Miltenberger. I am a member in good standing of the bar of the State of Texas. I am counsel for Plaintiffs in the above-styled matter ("**Plaintiffs**"). I have personal knowledge of the facts contained herein, all of which are true and correct.

1. My firm (Law Office of Chris R. Miltenberger, PLLC) (the "**Miltenberger Firm**") and I, along with Steve Ashley and his firm (Kelly, Morgan, Dennis, Corzine & Hansen, P.C.) (the "**Ashley Firm**") represent Plaintiffs in this action. The Miltenberger Firm and the Ashley Firm are referred to herein collectively as the "**Law Firms**".

## <u>Experience</u>

2.      I am a licensed attorney practicing in the Dallas/Ft. Worth Metroplex area and am the founder of The Law Office of Chris R. Miltenberger, PLLC. I am admitted to practice in Texas and in the following federal courts: United States Supreme Court, Fifth Circuit Court of Appeals, United States District Courts for the Northern, Southern, Eastern and Western Districts of Texas, the United States District Court for the Northern District of Florida and the United States District Court for the District of Colorado. I regularly represent plaintiffs in FLSA overtime cases in federal courts throughout Texas.

3.      I was admitted to the Texas bar in 1982. I have practiced largely in the area of employment law for 26 years of my 36-year legal career, including the areas of wage and hour violations. I was a partner in the Dallas-based law firm of Worsham, Forsythe & Wooldridge (now Hunton & Williams) where my practice was focused on labor and employment law. My vitae is attached hereto as **Exhibit A-1**. I am a graduate of the University of Missouri – Columbia School of Law where I was a member of the Law Review. My firm is or has been involved in numerous cases complaining of illegal employment practices, many of which have been FLSA class or collective actions filed in courts across the United States and with plaintiffs

located across the United States.  Examples of recent FLSA cases I filed in the

Western District[1] are:

> a.  *Richard Eicher, individually and on behalf of all those similarly situated v. Baker Hughes Inc.*; No. 7:16-cv-72-RAJ-DC; United States District Court for the Western District of Texas (Midland/Odessa Division)(filed as collective action, FLSA)(settlement);

> b.  *Daniel Ajayi, individually and on behalf of all others similarly situated v. Oil-Tech Construction, LLC;* No. 7:17-cv-228; United States District Court for the Western District of Texas (Midland/Odessa Division)(filed as collective action, FLSA)(settlement);

> c.  *Lupe Elizondo, individually and on behalf of all others similarly situated v. SA Family Help and Hope LLC;* No. 5:17-cv-0013-XR; United States District Court for the Western District of Texas (San Antonio Division)(filed as collective action, FLSA)(settlement); and

> d.  *Joanie Christa, individually and on behalf of all others similarly situated v. Manci Enterprises LLC;* No. 5:17-cv-00425-OLG; United States District Court for the Western District of Texas (San Antonio Division)(filed as collective action, FLSA)(settlement).

4.  The second attorney working on this case, Rebecca K. Miltenberger,

was admitted to the Texas bar in 1983.  She has practiced in several areas of law

during her legal career, including employment law for more than eleven years of her

career.  Ms. Miltenberger has handled cases in minimum wage and overtime,

discrimination, family medical leave and retaliation.  Her vitae is attached hereto as

**Exhibit A-2**. She is a graduate of the University of Missouri – Columbia School of

Law where she was a member of the Order of the Coif and an editor of the Law

---

[1] This list does not include numerous FLSA cases filed in the Northern, Eastern or Southern Districts of Texas.

Review. The third attorney working on the case, Steve Ashley, was admitted to the Texas bar in 1986. His vitae is attached hereto as **Exhibit A-8**.

### Description of Case and Specific Work Performed

5.      This case was filed on February 13, 2017, when Plaintiffs Hobbs and Feeney brought this lawsuit against Petroplex Pipe and Construction, Inc. ("**Petroplex**" or "**Defendant**") under the Fair Labor Standards Act ("**FLSA**") for unpaid overtime compensation.   On September 4, 2018, this Court conducted a bench trial in this case, concerning whether Defendant failed to pay Plaintiffs wages in accordance with the FLSA. On March 7, 2019, the Court made its findings of fact and conclusions of law, and ordered that judgment be entered against Defendant in the amount of: (1) $50,800 in unpaid wages; (2) $50,800 in liquidated damages; and (3) Reasonable attorney fees and costs.

6.      This case centered around the issue of whether Plaintiffs were incorrectly classified as independent contractors instead of employees.    Ms. Miltenberger and I were required to prepare pleadings, conduct discovery, participate in and respond to motion practice, prepare pre-trial documents (jury and bench), conduct a bench trial and prepare post-trial motions. We were required to prepare for and participate in depositions of several individuals to obtain information regarding the fact-intensive circumstances surrounding Plaintiffs' misclassification as independent contractors.  Further, we filed and were required to respond to Motions for Summary Judgment regarding such fact-intensive

circumstances surrounding Plaintiffs' misclassification. Finally, we were required to file and prosecute a Motion to Compel answers to discovery in this matter.

7.       There have been 119 ECF filings in this case, with contested motions filed along the way.  The summary judgment motions on both sides involved significant deposition testimony review and documentation of significant amounts of facts surrounding this case, due to the fact-intensive nature of the central issue in the action.  In an inquiry regarding whether a person is an employee or independent contractor, five or more factors must be analyzed.  *See Hopkins v. Cornerstone Am.,* 545 F.3d 338, 343 (5th Cir. 2008).  By its nature, this multi-factor test is a fact-intensive exercise.  *See Carrell v. Sunland Contr., Inc.,* 998 F.2d 330, 334 (5th Cir. 1993). In preparing Plaintiffs' Motion for Summary Judgment and responding to Defendant's Motion for Summary Judgment, our office was required to review the deposition testimony of five witnesses to establish Plaintiffs' case.  In order to accurately brief our summary judgment motion, respond to Defendant's summary judgment motion and submit a reply in our summary judgment motion, our office submitted 75 pages in briefing with a voluminous amount of exhibits in support.

8.       This case was filed with a jury request.  Our office readied for a jury trial, preparing voir dire and jury instructions.   However, at the pretrial hearing, the Court urged the parties to try this case as a bench trial.  Thus, after such work

was completed, the parties agreed to try this case to the bench and our office switched gears and prepared proposed Findings of Fact and Conclusions of Law.

9.      Also, at the pretrial hearing, the Court urged the parties to mediate the case before trial. Thus, our office participated in good-faith mediation, but to no avail.

10.      At the conclusion of the trial, Defendant requested to submit written arguments to the Court in lieu of closing and the Court agreed. Thus, our office drafted our own written argument in lieu of closing, together with proposed Findings of Fact and Conclusions of Law to submit to the Court, complete with transcript citations. In preparation of Plaintiffs' Post Trial Brief and Annotated Findings of Fact and Conclusions of Law (Doc. 115), we were required to review the transcript for specific cites to support specific Findings of Fact that were set forth in such Post Trial Brief.

11.      The Plaintiffs prevailed regarding the central and most important issue of the case, *i.e.,* that the Plaintiffs were in fact employees of Defendant and entitled to overtime, and the Court found no factors that pointed to independent contractor status for Plaintiffs. In so finding, the Court awarded Plaintiffs all unpaid overtime they were entitled under the law within the normal two-year statute of limitations, as well as the full matching amount in liquidated damages.

**Reasonable Rates**

12.     A reasonable hourly fee in the Western District of Texas for a lead lawyer with similar experience and expertise to me is at least $425.00 per hour. My standard hourly rate is at least $500 per hour; I charge my fee-paying clients at least $500 per hour. Thus, the $425 per hour rate requested here is a full fifteen percent my lowest rate charged my fee-paying clients.

13.     A reasonable hourly fee in the Western District of Texas for a second/third lawyer with similar experience and expertise to Rebecca Miltenberger and Steve Ashley is at least $350.00 per hour and a reasonable hourly fee in the Western District of Texas for paralegals is at least $110.

14.     I believe that our rates of $425.00 and $350.00 that we are charging for my services, Ms. Miltenberger's services and Mr. Ashley's services in this case are below the market rate for attorneys with comparable expertise, experience and qualifications in the Western District of Texas and are reasonable and appropriate in this case. In concluding that the rates set forth immediately above are reasonable in the Western District of Texas, I reviewed an extensive survey of attorneys' fee rate court rulings for employment cases in the Western District of Texas attached hereto as **Exhibit A-3** (see pages 20-24 thereof).[2]   I also reviewed a recent

---

[2] In concluding that the rates set forth immediately above are reasonable in the Western District of Texas, I did not rely on the State Bar Survey. For the reasons discussed in the report of Dr. Shirlene Pearson (attached hereto as **Exhibit A-4**), the State Bar Survey should be considered unreliable and should not be relied upon in awarding attorneys' fees. Instead, the survey setting forth rates awarded

attorneys' fee ruling by this Court in *Roberts v. Brinkerhoff Inspection, Inc.*, No. 7:16-cv-00342 (Doc. 86) (W.D. Tex. Midland) (Counts, J.)(adopting fees requested in Doc. 80) and the motion for such fees (Doc. 80), in which the Court awarded a lead Midland/Odessa employment attorney with less years of experience than me, Holly B. Williams, her full attorneys' fees sought at her rate of $425 per hour. I also reviewed a declaration by Holly B. Williams, attached hereto as **Exhibit A-5** in which Ms. Williams opines that a $425 rate for me, a $350 rate for Ms. Miltenberger and Mr. Ashley, and a $110 rate for our paralegal is reasonable for legal professionals of similar experience and specialization in the Western District of Texas and the Midland/Odessa area.

## Time Keeping Process of Law Firms

15.     The Law Firms performed the services on the dates for the time indicated in the time records attached hereto as **Exhibit A-6.** The specific work performed by the Law Firms in prosecuting this action is detailed in the time entries attached to this declaration. It is Law Firms' practice to maintain contemporaneous time records setting forth the amount of time spent working on each case with descriptions regarding the actual task involved. My usual practice, and the usual practice of Ms. Miltenberger and Mr. Ashley is to record only those hours that the Law Firms would customarily bill to a client paying on an hourly basis.

---

to plaintiffs' attorneys in specific employment cases is a more reliable source and is the source which I reviewed and upon which I partially relied.

16.    Ms. Miltenberger and I also exercised billing judgment before recording time to eliminate time for duplicative or redundant tasks or to reduce time for work that may have been inefficient, unproductive or excessive. Additionally, after time entries were made, I exercised additional billing judgment by further reducing certain time entries of Ms. Miltenberger in order to streamline hours of documentation and deposition review and legal research; such billing judgment reflects a reduction of 23.55 hours at $350 per hour, or $8,242.50.  *See* negative entries in Exh. A-6.  Further, with respect to Defendant's Motions to Dismiss certain opt-in plaintiffs for failure to respond to discovery, I deleted charges for my time spent responding to such motions. Finally, I reduced all of my travel time to Midland/Odessa for this case by 50 percent, in order to further reasonably reduce my fees by a total of 19 hours or $8,075.00.  *See* additional negative entries in Exh. A-6 (immediately following each Midland travel entry).

17.    To the extent I could assign work to Ms. Miltenberger, who has a lower billable rate than I, to perform particular tasks, I exercised billing judgment and did so.

18.    In my exercise of billing judgment, I have reviewed the billing records maintained in this case and am satisfied that the amount of time billed to specific tasks, and the amount spent on the case overall, is reasonable and not excessive in light of the issues in the case.

**Lodestar**

19.     Through March 25, 2019, the Law Firms spent a total of 399.90 hours on this matter.  The hours expended are as follows:

| Timekeeper | Number of Hours | Hourly Rate | Lodestar Amount |
|---|---|---|---|
| Chris Miltenberger | 159.35 | $425 | $67,723.75 |
| Rebecca Miltenberger | 207.15 | $350 | $72,502.50 |
| Steve Ashley | 8.60 | $350 | $3,010.00 |
| Paralegal | 24.80 | $110 | 2,728.00 |
| **Total** | | | **$145,964.25** |

20.     The Law Firms' lodestar (hours x hourly rates) on the hours expended through March 25, 2019, amounts to $145,964.25. I certify that the hours claimed here for myself, Ms. Miltenberger and Mr. Ashley are well grounded in fact and justified and that they were actually expended on the topics stated. Further, I certify that hours expended here and the rates claimed are reasonable in this instance.   The Law Firms will incur additional time in post-trial motions should Defendant file them.   Payment will be sought for that additional time if such motions are filed.

**Costs and Expenses**

21.     Reasonable and necessary expenses incurred in addition to the lodestar amount of the attorneys' fees are $3,924.19.  The expenses are listed in **Exhibit A-7.**  With respect to Defendant's Motions to Dismiss certain opt-in

DocuSign Envelope ID: D54B5DD9-F070-4A0B-8084-5FC1DB1F98E87

plaintiffs for failure to respond to discovery, Exhibit A-7 shows that I deleted charges for expenses spent with regard to such plaintiffs, thus reducing expenses by a total of $259.57. *See* N/C entries in Exh. A-7. Each of the remaining expenses was reasonably, necessarily and actually incurred in this litigation. Each of the remaining expenses are of the type that I normally charge to fee-paying clients.

22.     Additionally, the Plaintiffs in this case have incurred certain other costs totaling $3,993.04.  The costs are listed in a Bill of Costs that will be filed contemporaneously herewith and with a separate declaration by me regarding their validity.  Total costs and expenses are $7,917.23.

### Nature of the Federal Overtime Case

23.     The Law Firms took this overtime case on a contingency basis, without any assurance that we would be paid any fees or reimbursed any cost for our efforts or expenditures. At no time did we have any assurance that we would also prevail in this matter or that a mutually agreeable settlement could be reached. The Law Firms have accepted no monies from Plaintiffs for fees and costs.

24.     The Law Firms accepted the case because of the important principle of vindicating the Plaintiffs' statutory right to be paid appropriately and to be treated as employees, when, in fact, they were employees.

25.     The parties worked hard to litigate this case as efficiently as possible and the respective counsel cooperated in a professional manner.   Litigation in federal court, however, is time consuming, as the Court rightly expects and

demands that the parties' filings with the Court be prepared in a detailed and professional manner to assist the Court in resolving matters. To this end, Plaintiffs' counsel was as efficient as possible in meeting the high expectations of this Court and federal courts in general.

26. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on _3/27/2019_____.

DocuSigned by:

*Chris Miltenberger*
_____
2D8CD59D2BAF40C...

Chris R. Miltenberger
Attorney for Plaintiffs

# EXHIBIT A-1

## CHRIS R. MILTENBERGER

1360 N. White Chapel, Suite 200, Southlake, Texas 76092
(817) 416-5060   chris@crmlawpractice.com

---

**Law Firm Affiliation**

THE LAW OFFICE OF CHRIS R. MILTENBERGER, PLLC                    July 2012 - Present
- ☐ Founder

MILTENBERGER LAW FIRM                    Sept. 2005 – April 2008
- ☐ Of Counsel

WORSHAM, FORSYTHE & WOOLDRIDGE, L.L.P.  (now                    1982-1998
Hunton & Williams, L.L.P.)
- ☐ Partner                    1990-1998
- ☐ Associate                    1982-1990

---

**Executive Management/In-House Counsel Employment**

GEOS COMMUNICATIONS, INC./D MOBILE, INC.
- ☐ President, Geos Communications (OTCBB: GCMI)                    Aug. 2008 – Jul 2012
- ☐ Executive Vice President - Legal Counsel, HR and IT, D                    Aug. 2010 – July
  Mobile                    2012

RESOURCE CONCEPTS, INC.
- ☐ President and Legal Counsel                    1998 - 2004

---

**Current Practice**

REPRESENTATION OF EMPLOYEES – 2012 TO PRESENT

- ☐ Practice currently involves the representation of employees in wage and hour issues, all manner of discrimination and sex harassment lawsuits, including hostile work environment cases, religion and disability discrimination cases.

- ☐ Representation of consumers under the Telephone Consumer Protection Act and the Fair Credit Reporting Act.

- ☐ Practice involves cases in both federal and state courts. Represents individuals on a contingency fee basis.

---

PREVIOUS LABOR AND EMPLOYMENT EXPERIENCE

☐ Practice in the labor and employment area has involved counseling employers on all aspects of the employer-employee relationship including handling matters in federal and state court, arbitration and administrative forums. Represented clients ranging from companies with only a few employees to Texas Utilities, a then public utility with over 10,000 employees. Advised companies employing both union and non-union workers.

PREVIOUS ARBITRATION AND ALTERNATIVE DISPUTE RESOLUTION EXPERIENCE

☐ Represented management in over 50 labor arbitration hearings, 39 as lead counsel and 11 as second chair:

   o Prepared grievance answers, researched and selected neutral third-party arbitrators, interviewed witnesses, prepared testimony and witnesses, presented testimony and documentation to the arbitrator and wrote post-hearing arbitration briefs.

**Education and Bar Membership**

UNIVERSITY OF MISSOURI – COLUMBIA SCHOOL OF LAW          Juris Doctorate, 1982
   ☐ Missouri Law Review
   ☐ Teaching Assistant, Business Law

SOUTHEAST MISSOURI STATE UNIVERSITY                                    1978
   ☐ Bachelor of Arts – Accounting and Economics, *Cum Laude*

TEXAS BAR ASSOCIATION, Member                                           1982 to present
UNITED STATES SUPREME COURT, Member
5TH CIRCUIT COURT OF APPEALS, Member
NORTHERN DISTRICT OF TEXAS, Member
EASTERN DISTRICT OF TEXAS, Member
SOUTHERN DISTRICT OF TEXAS, Member
WESTERN DISTRICT OF TEXAS, Member
NORTHERN DISTRICT OF FLORIDA, Member
DISTRICT OF COLORADO, Member

ASSN. OF TECHNOLOGY LAW PROFESSIONALS, Member          2010 to present

# EXHIBIT A-2

### *REBECCA K. MILTENBERGER*
1360 N. White Chapel, Suite 200
Southlake, TX 76092
**Office:  (817)416-5060**
**Mobile: (817) 291-5410**
**rkmilt@crmlawpractice.com**
Member:  State Bar of Texas

## LEGAL EMPLOYMENT

**The Law Office of Chris R. Miltenberger, PLLC**
   *Contract Attorney,* 2013-Present
   *Areas of Practice:*  Employment Law; Employment Litigation; Business Organizations;
   Business Contract Review, Drafting and Negotiation; General Administrative Litigation;
   Consumer Litigation; Education Law

**The Miltenberger Law Firm, PLLC**
   *Contract Attorney,* 2008-2009, 2012
   *Areas of Practice:*  Business Organizations; Business Contract Review, Drafting and
   Negotiation; Employment Law; Products Liability; Insurance Defense; General
   Administrative Litigation; Education Law

**Henslee, Fowler, Hepworth & Schwartz, LLP (now Henslee Schwartz LLP)**
   *Contract Attorney,* 2005-2008
   *Areas of Practice:*  Education Law representing Texas Public School Districts in matters of
   Employment Law, Business Transactions and Business Contracts involving School Districts,
   Special Education Law, Student Discipline and Student Rights, and Board Governance

**Jackson, Walker, Winstead, Cantwell & Miller (now Jackson Walker L.L.P)**
   *Associate,* 1983-1987
   *Areas of Practice*:  Corporate Securities; ERISA; General Corporate (including small
   business corporate structures and contract review, drafting and negotiation)

## EDUCATION

**Juris Doctorate:** *Order of the Coif,* **University of Missouri – Columbia, 1983;**
                  **Missouri Law Review - Note & Comment Editor**
**B.F.A. Music:**   University of Missouri – Columbia, 1980
**A.A. Music:**  Stephens College - 1977

## PUBLIC OFFICE

**Carroll Independent School District Board of Trustees,** 2000-2004
   *Vice President,* 2002-04
   *Member,* 2000-04
   *Chairman,* Academic Co-Curricular Enhancement Committee, 2001-04; Technology

Committee, 2001-02
***Member,*** District Advisory Committee, Drug and Alcohol Awareness Committee, Title IX Review Committee, Texas Association of School Boards General Assembly

## LEGAL EXPERIENCE

### CURRENT:  Employment Law and Consumer Protection Law
- Advises clients regarding compliance with and violations of federal and state employment law as it applies to public and private employees regarding discrimination, retaliation, overtime and minimum wage, and medical leave (specifically with regard to issues arising under the FLSA, FLMA, ADA, ADEA and Title VII)
- Advises clients regarding compliance with and violation of federal and state employment law as it applies to contract and at-will employees (specifically with regard to issues arising under the ADA, ADEA, FLSA, FMLA and Title VII)
- Negotiates, drafts, revises and interprets employment contracts for private employees and for public employees within the administrative and legal framework governing such public and private employees
- Advises consumers under the Telephone Consumer Protection Act and the Fair Credit Reporting Act.

### CURRENT:  Employment Litigation and Consumer Protection Litigation
- Drafts pleadings of clients in all areas of employment litigation, including litigation involving discrimination, retaliation, overtime and minimum wage, medical leave, and employment contract breaches
- Drafts pleadings of clients in all areas of consumer protection litigation
- Conducts discovery for clients in above described litigation
- Conducts research and drafts motions and briefs in above described litigation, including motions involved in discovery conflicts and any and all dispositive motions and briefs therefore

### PAST:  Tort Litigation
- Drafted pleadings in the defense of clients in mass toxic tort litigation
- Conducted discovery for clients in mass tort litigation
- Drafted  motions and briefs in the defense of clients in complex tort litigation

### CURRENT AND PAST:  Corporate and ERISA
- Reviews, drafts, negotiates and executes service agreements, purchase and sales contracts, and various other agreements for corporate clients
- Advises business clients in matters of business organization and administrative and regulatory requirements
- Incorporates private corporations, forms limited partnerships and drafts stock purchase and other agreements for business clients
- Drafted and executed SEC documents and performed due diligence for several public stock offerings
- Drafted and executed private stock offering documents and closing documents related thereto

- Advised corporate clients regarding various ERISA issues

## CURRENT AND PAST:  Education Law

- Advises clients regarding compliance with federal and state employment law as it applies to Chapter 21 and at-will employees (specifically with regard to issues arising under the ADA, ADEA, FLSA, FMLA and Title VII)
- Advises clients in the areas of student discipline and student rights (specifically with regard to issues arising under the TEC, Title IX and federal and state constitutional law)
- Negotiated, drafted and revised contracts for service agreements, purchase and sales, facility lease and use and employment within the administrative framework governing Texas school districts
- Represented clients in student and employee grievance procedures and hearings
- Assisted in representation of clients in administrative hearings and mediations under the IDEA and Section 504
- Advised clients regarding compliance issues under the IDEA and Section 504
- Advised clients in the area of board and administrative governance with respect to grievance procedures, parliamentary procedures and OMA, PIA, TEC, TLGC and TGC compliance

## EXPERIENCE IN PUBLIC OFFICE

- Over a four year period made nine million dollars in budget cuts resulting in facility closures and reductions in force of more than 100 employees
- Heard and ruled upon several employee and public grievances, including grievances involving employment issues, student and parental rights and student discipline
- Developed Title IX Review Committee to perform a self-evaluation of CISD's compliance
- Presided over a policy audit, more than seven major policy updates and the institution of regulations to standardize travel, expenditures, fees and facility use
- Assisted in development of CISD's Dyslexia Program and CARE Reading Program to meet state and federal requirements for the adequate education of students with dyslexia and related disorders
- Reviewed state guidelines for talented and gifted students and chaired  committee recommending changes in CISD's program
- Reviewed recent developments in student drug testing and reported such developments to appropriate committee for action

## TRAINING IN ALTERNATIVE DISPUTE RESOLUTION

- **University of Texas- Arlington - Division for Enterprise Development**-  Certificate of Completion of Basic Mediation Training (Meeting the Standards of the TMTR and the requirements of Section 154.052(a) of the Texas Civil Practice and Remedies Code)(2011)
- **University of Texas- Arlington - Division for Enterprise Development** - Certificate of Completion of Mediation in the Employment Sector:  Workplace Conflict (2011)
- **University of Texas- Arlington - Division for Enterprise Development** - Certificate of Completion of Advanced Family Law and Mediation (Meeting the Standards of the TMTR and the requirements of 154.052(b) of the Texas Civil Practice and Remedies Code)(2011)

# EXHIBIT A-3

**ATTORNEYS' FEE RATE RULINGS:  EMPLOYMENT CASES IN TEXAS**

| Adjusted* Hourly Rate | Hourly Rate Approved | JD Year | Attorney | Ruling Date | Case and Judge |
|---|---|---|---|---|---|
| **West Texas** | | | | | |
| $891.31 | $750 | 1979 | Ricardo G. Cedillo | 04/10/12 | *Barrera v. MTC, Inc.*, No. 5:10-cv-00665 [Doc. 77] (W.D. Tex. San Antonio) (Judge Xavier Rodriguez) (adopting fees requested in Doc. 73). |
| $473.71 | $425 | 2004 | Rachhana T. Srey | 11/10/15 | *Clark v. Centene Corp.*, No. 1:12-cv-00174-SS [Doc. 180] (W.D. Tex. Austin) (Judge Sam Sparks) |
| $473.71 | $425 | 1991 | Paul J. Lukas | 11/10/15 | *Clark v. Centene Corp.*, No. 1:12-cv-00174-SS [Doc. 180] (W.D. Tex. Austin) (Judge Sam Sparks) |
| $469.42 | $395 | 1993 | Ramon Bissmeyer | 04/10/12 | *Barrera v. MTC, Inc.*, No. 5:10-cv-00665 [Doc. 77] (W.D. Tex. San Antonio) (Judge Xavier Rodriguez) (adopting fees requested in Doc. 73). |
| $452.94 | $400 | 1993 | Douglas Welmaker | 10/08/14 | *Meesook v. Grey Canyon Family Medicine, P.A.*, No. 5:13-cv-729-XR [Doc. 39], 2014 WL 5040133 (W.D. Tex. San Antonio) (Judge Xavier Rodriguez) |
| $431.29 | $400 | 1978 | B. Craig Deats | 04/29/16 | *Vigil v. City of Austin, Texas*, Cause No. D-1-GN-13-001742 (200th Judicial District Court for Travis County, Texas) (Judge Karin Crump) |

*  Adjusted for inflation from the year the court ruled the rate to be reasonable to the end of 2018 using the Consumer Price Index for Legal Services as generated by the United States Bureau for Labor Statistics:  https://www.officialdata.org/Legal-services/price-inflation

**ATTORNEYS' FEE RATE RULINGS:  EMPLOYMENT CASES IN TEXAS**

| Adjusted* Hourly Rate | Hourly Rate Approved | JD Year | Attorney | Ruling Date | Case and Judge |
|---|---|---|---|---|---|
| $425.00 | $425 | 1993 | Holly B. Williams | 06/22/18 | *Roberts v. Brinkerhoff Inspection, Inc.*, No. 7:16-cv-00342 [Doc. 86] (W.D. Tex. Midland) (Judge David Counts) (adopting fees requested in Doc. 80) |
| $390.11 | $350 | 1995 | J. Derek Braziel | 12/08/15 | *Rodriguez v. Mechanical Tech. Servs., Inc.*, No. 1:12-cv-00710 [Doc. 175] (W.D. Tex. Austin) (Judge David Ezra) |
| $390.11 | $350 | 1979 | Oscar H. Villareal | 06/11/15 | *Alonzo-Miranda v. Schlumberger Tech. Corp.*, No. 5:13-cv-01057-RCL [Doc. 172] (W.D. Tex. San Antonio) (Judge Royce Lamberth) |
| $388.98 | $300 | 1993 | John A. Wenke | 12/21/09 | *Jackson v. Host Int'l*, No. 3:08-cv-00112 [No. 101] (W.D. Tex. El Paso) (Judge Frank Montalvo) |
| $386.23 | $325 | 1997 | Edmond Moreland | 05/09/12 | *Ransom v. M. Patel Enters., Inc.*, No. 1:10-cv-00857 [Doc. 194] (W.D. Tex. Austin) (Magistrate Judge Andrew Austin), *reversed on other grounds* 734 F.3d 377 (5th Cir. 2013) |
| $377.38 | $350 | 1996 | Robert Notzon | 03/15/16 | *Saldivar v. Austin Indep. Sch. Dist.*, No. 14-CA-00117 [Doc. 97 ] (W.D. Tex. Austin) (Judge Sam Sparks) |

*  Adjusted for inflation from the year the court ruled the rate to be reasonable to the end of 2018 using the Consumer Price Index for Legal Services as generated by the United States Bureau for Labor Statistics:  https://www.officialdata.org/Legal-services/price-inflation

**ATTORNEYS' FEE RATE RULINGS:  EMPLOYMENT CASES IN TEXAS**

| Adjusted* Hourly Rate | Hourly Rate Approved | JD Year | Attorney | Ruling Date | Case and Judge |
|---|---|---|---|---|---|
| $375.89 | $325 | 1993 | Holly B. Williams | 07/09/13 | *Ibarra v. United Parcel Service, Inc.*, No. 7:10-cv-00113 [Doc. 147] (W.D. Tex. Midland) (Judge Harry Hudspeth) |
| $334.38 | $300 | 2006 | Meredith Matthews | 12/08/15 | *Rodriguez v. Mechanical Tech. Servs., Inc.*, No. 1:12-cv-00710 [Doc. 175] W.D. Tex. Austin) (Judge David Ezra) |
| $323.47 | $300 | 2008 | Aaron Johnson | 06/13/16 | *Mohammadi v. Nwabuisi*, No. 5:12-cv-00042 [Doc. 148] (W.D. Tex. San Antonio) (Judge Robert Pitman) |
| $323.47 | $300 | 2007 | Manuel Quinto-Pozos | 04/29/16 | *Vigil v. City of Austin, Texas*, Cause No. D-1-GN-13-001742 (200th Judicial District Court for Travis County, Texas) (Judge Karin Crump) |
| $323.47 | $300 | 2006 | Matt Bachop | 04/29/16 | *Vigil v. City of Austin, Texas*, Cause No. D-1-GN-13-001742 (200th Judicial District Court for Travis County, Texas) (Judge Karin Crump) |
| $323.24 | $290 | 2008 | Aaron Johnson | 12/08/15 | *Rodriguez v. Mechanical Tech. Servs., Inc.*, No. 1:12-cv-00710 [Doc. 175] (W.D. Tex. Austin) (Judge David Ezra) |
| $306.52 | $275 | 2009 | Chris Willett | 12/08/15 | *Rodriguez v. Mechanical Tech. Servs., Inc.*, No. 1:12-cv-00710 [Doc. 175] (W.D. Tex. Austin) (Judge David Ezra) |

*  Adjusted for inflation from the year the court ruled the rate to be reasonable to the end of 2018 using the Consumer Price Index for Legal Services as generated by the United States Bureau for Labor Statistics:  https://www.officialdata.org/Legal-services/price-inflation

**ATTORNEYS' FEE RATE RULINGS:  EMPLOYMENT CASES IN TEXAS**

| Adjusted* Hourly Rate | Hourly Rate Approved | JD Year | Attorney | Ruling Date | Case and Judge |
|---|---|---|---|---|---|
| $306.52 | $275 | 2009 | Alexander Baggio | 11/10/15 | *Clark v. Centene Corp.*, No. 1:12-cv-00174-SS [Doc. 180] (W.D. Tex. Austin) (Judge Sam Sparks) |
| $301.90 | $280 | 2010 | Philip J. Moss | 06/13/16 | *Mohammadi v. Nwabuisi*, No. 5:12-cv-00042 [Doc. 148] (W.D. Tex. San Antonio) (Judge Robert Pitman) |
| $283.08 | $250 | 2011 | Michael L. Parsons | 10/08/14 | *Meesook v. Grey Canyon Family Medicine, P.A.*, No. 5:13-cv-729-XR [Doc. 39], 2014 WL 5040133 (W.D. Tex. San Antonio) (Judge Xavier Rodriguez) |
| $250.79 | $225 | 2013 | Jay Forester | 12/08/15 | *Rodriguez v. Mechanical Tech. Servs., Inc.*, No. 1:12-cv-00710 [Doc. 175] (W.D. Tex. Austin) (Judge David Ezra) |

\*  Adjusted for inflation from the year the court ruled the rate to be reasonable to the end of 2018 using the Consumer Price Index for Legal Services as generated by the United States Bureau for Labor Statistics:  https://www.officialdata.org/Legal-services/price-inflation

# EXHIBIT A-4

# Review of the State Bar of Texas *2015 Hourly Fact Sheet* report and its Use by Texas Judiciary in Deciding Plaintiff Attorney Hourly Fees in Labor-Employment Cases[1]

N. Shirlene Pearson, Ph.D.[2]

*Pearson Statistical Consulting & Expert Testimony*

28601 Los Alisos Blvd #2075

Mission Viejo, CA 92692-7920

214-597-1267

*shirlene.pearson@msn.com*

*statisticalexpert.com*

The State Bar of Texas publishes the results of a survey of Texas attorneys ("Attorney Survey"), conducted every two years, that is used to generate the *Hourly Fact Sheet* report. This report focuses on attorney hourly rates charged in the preceding year and, where possible, compares these rates with those of the previous survey.  Thus, the 2015 survey results are compared with the 2013 survey results. A copy of the questionnaire is included in the 2015 report, which was published in August 2016.  In Texas, these results are often used to determine allowable rates that plaintiff attorneys, retained on a contingency basis, can charge in Labor-Employment cases heard within the state of Texas, so it is of interest to the Texas Labor-Employment plaintiff attorney community to ensure that the best possible resources are being used for these determinations. The report contained herein provides a review of the *2015 Hourly Rate Sheet* and the Attorney Survey as to their relevance and usefulness for use in setting contingency-based plaintiff attorney fees in Texas Labor-Employment cases.

Review of the State Bar of Texas *2015 Hourly Fact Sheet* report and its use by Texas judiciary in deciding contingency-based plaintiff attorney hourly fees in Labor-Employment cases uncovered some problematic areas that are the focus of this review. Based on the findings in this review, I recommend that no reliance should be made on the Attorney Survey nor the *Hourly Fact Sheet* report, as currently being conducted, when deciding allowable fees that plaintiff attorneys can charge in Labor-Employment cases.

---

[1] This work was commissioned by the Texas Employment Lawyers Association.

[2] N. Shirlene Pearson earned her Ph.D. in statistics from Southern Methodist University (SMU) in 1979, and has worked as a professional statistician in both industry and academia since graduation. She also earned an M.S. in statistics from SMU, an M.A. and B.A. in mathematics from the University of Texas at Austin. She has been employed at Bell Telephone Laboratories, Bell Communications Research, the Applied Research Laboratories at the University of Texas at Austin, MCI Communications/WorldCom, and SMU. She was a District Manager at Bell Communications Research and a Branch Manager at the Applied Research Laboratories. She joined Southern Methodist University as Director of the Center for Statistical Consulting and Research in 1999, and transferred to the Academic Technology Services group in 2006, then to SMU's Center for Teaching Excellence. She retired from SMU in February 2015, but continued working at SMU as a consultant supporting the university assessment process and as an Adjunct Faculty in the Department of Statistical Sciences. She is retiring as Adjunct Faculty at SMU in December 2016 to focus entirely on her consulting activities. Dr. Pearson has written numerous technical reports, legal reports, and articles in which her use of statistical methodology was an instrumental component.

EXHIBIT B

The Attorney Survey is sent to all Texas attorneys who are members of the Texas State Bar and who did not opt out of receiving emails containing the survey. Emails with the 2015 survey were sent to 94,150 attorneys, of which 11,793 responded in part or in whole. The *Hourly Fact Sheet* (hereafter "Report") states the response rate to be 12.5 percent (11,793/94,150). However, the Report only uses the data of those respondents who were employed full time as licensed and practicing attorneys (4,260, which is less than half of the total respondents); so, the stated response rate might not accurately reflect the response rate of those being analyzed in the Report, since it is (apparently) unknown as to how many of the 94,150 surveyed were full-time attorneys. No discussion of this dilemma is presented in the report. Because no breakdown by practice area is given of these recipients in the Report, it is not possible for the reader to determine what the response rate was for Labor-Employment attorneys. Survey response rates are an important factor in assessing the reliability of the results. A survey response rate of 30% is, in most cases, considered more reliable than a response rate of 10%, and 10% is better than 5%, given the same survey distribution conditions.

While there is no universally accepted standard on what is an acceptable response rate to a survey, it is my expert opinion that a response of 25% is not unusual without follow-up contact, but is too low to guard against selection bias issues.  Certainly, a response rate of 12.5% leaves much room for improvement and is not "good."

A study of response rates in surveys conducted by The Tavistock Institute of institutional research[3] found the following:

> This study examines the response rates for surveys used in organizational research. We analyzed 1607 studies published in the years 2000 and 2005 in 17 refereed academic journals, and we identified 490 different studies that utilized surveys. We examined the response rates in these studies, which covered more than 100,000 organizations and 400,000 individual respondents. The average response rate for studies that utilized data collected from individuals was 52.7 percent with a standard deviation of 20.4, while the average response rate for studies that utilized data collected from organizations was 35.7 percent with a standard deviation of 18.8. Key insights from further analysis include relative stability in response rates in the past decade and higher response rates for journals published in the USA. The use of incentives was not found to be related to response rates and, for studies of organizations, the use of reminders was associated with lower response rates. Also, electronic data collection efforts (e.g. email, phone, web) resulted in response rates as high as or higher than traditional mail methodology.

The Attorney Survey is a *self-selecting* survey. That is, the recipients decide whether or not to participate. Surveys of this type are known to suffer from selection bias (lack of representativeness of the population of interest),[4] the extent of which is almost always unmeasurable. This means that the group who respond may differ from those who did not in important characteristics that can influence

---

[3] Yahuda Baruch and Brooks C. Holtom (2008). Survey response rate levels and trends in organizational research. Human Relations. *Sage Publications*, Vol. 61, Issue 8, 1139-1160.

[4] Yasser Khazaal, MD, corresponding Yasser Khazaal, MD Mathias van Singer, Anne Chatton, MA, Sophia Achab, MD, PhD, Daniele Zullino, MD, Stephane Rothen, PhD, Riaz Khan, MD, Joel Billieux, PhD, and Gabriel Thorens, MD. (2014). Does Self-Selection Affect Samples' Representativeness in Online Surveys? An Investigation in Online Video Game Research. *J Med Internet Res.*, 16(7): e164. (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4115258/)

EXHIBIT B

and skew the results. It is almost always impossible for those conducting self-selection surveys to determine these differentiating characteristics, so the effect of selection bias on the results can rarely be determined.  This is of particular concern in surveys in which some (but not all) recipients have a vested interest in the outcomes. Such surveys tend to have a greater response rate from those interested in the results than those who have little or no interest unless participation is enforced.

A survey researcher in the pharmaceutical arena suggests a response rate of at least 50-60% to best for minimizing selection bias issues:

> Nonresponse error, or bias, occurs if data are not collected from each member of the sample. Nonresponse bias theoretically can occur with anything less than a 100% response rate. A response rate of 50%-60% or greater is optimal because nonresponse bias is thought to be minimal with that high of a response rate.[5] If the response rate is too low, those who responded have a greater chance of being self-selected (i.e., there is something inherently different about those who responded and those who did not respond), and thus not representative of the target population. Nonresponse bias can lead to inaccurate conclusions if data from the non-respondents would have changed the overall results of the survey.

Recommended response rates found at a University of Texas website

https://facultyinnovate.utexas.edu/sites/default/files/response_rates.pdf

are given as

> Acceptable response rates vary by how the survey is administered:
>
> o Mail: 50% adequate, 60% good, 70% very good
> o Phone: 80% good
> o Email: 40% average, 50% good, 60% very good
> o Online: 30% average
> o Classroom paper: > 50% = good
> o Face-to-face: 80-85% good

Selection bias is further exacerbated when the self-selection survey contains questions that are of a sensitive nature, which the Attorney Survey does. Response rates, as well as the quality of the answers, for self-selection surveys with sensitive questions suffer unless the recipients are convinced of complete anonymity. The *2015 Hour Rate Sheet* does not provide information to suggest that this is the case with the Attorney Survey nor does the survey itself describe measures to ensure anonymity. Some examples of sensitive questions in this survey are:

1. What was your approximate gross personal income (including any bonus) during calendar year 2015?
2. If you received a bonus, what was it?

---

[5] Fincham JE. (2008) Response rates and responsiveness for surveys, standards, and the Journal. *Am J Pharm Educ.*, 72:Article 43.

EXHIBIT B

PL 0037

3.   Which of the following best describes your class rank upon graduation from college?
4.   Which of the following best describes your class rank upon graduation from law school?

Many self-selecting recipients may either not respond to surveys with sensitive questions, skip those questions (if the survey allows), or perhaps embellish upon the answers they give. Tourangeau and Yan discuss their study of these three important consequences of asking sensitive questions[6]:

> Sensitive questions are thought to affect three important survey outcomes: (a) overall, or unit, response rates (that is, the percentage of sample members who take part in the survey), (b) item nonresponse rates (the percentage of respondents who agree to participate in the survey but who decline to respond to a particular item), (c) and response accuracy (the percentage of respondents who answer the questions truthfully). Sensitive questions are suspected of causing problems on all three fronts, lowering overall and item response rates and reducing accuracy as well.

Surveys administered via email suffer from another form of selection bias unique to email, that being spam and junk email filters. This survey was sent to a very large number of recipients, but no discussion in the report is given about measures, if any, taken to mitigate problems associated with spam filtering, which can occur at both the computer email server level and the individual user level. Much depends on how the survey is distributed. Because law firms and individual attorneys may have differing levels of filters on their email, the probabilistic nature (randomness) of the survey responses is perturbated. Without proper randomization of the responses, no statistically valid analysis can be performed on the data, including summary reports.

Inspection of the table of *Hourly Rate by Practice Area by Geographic Region* suggests that the sample size may be too small to provide adequate coverage of all geographic regions and practice areas. Empty cells in this table indicate that there were 5 or fewer responses (see page ii, paragraph 4). Response rates within cells are not provided nor are given measures of variability, so the reader is left uncertain as to the meaningfulness of these numbers. Six of the practice areas have no entries in the table for any of the regions, others have many empty cells or frequencies that seem low. Again, without knowing the within cell response rates, it is impossible to ascertain the reliability of these numbers. While this table may be useful for other purposes, it is inadequate for use in determining fee rates in actual cases.

Although asked to provide positional information in the Attorney Survey, the *2015 Hourly Rate Sheet* does not provide any information broken down by position categories. When setting fee rates, it would be useful to have this breakdown.

Some of the questions in the survey are ambiguous leading to results whose interpretation may not reflect the reality of the answers. Questions regarding hourly rates charged do not ask whether the rates listed by respondents are real rates or volume discounts. It is plausible that within firms offering volume discounts to certain clients, some attorneys may quote real (undiscounted) rates and others discounted rates, while others may use some combination of the two. This survey does not ask whether rates had changed during the year, that is, they are not asked to state the rate at a specific point(s) in time. Thus, some attorneys may quote the year-end rate, while others may estimate an overall rate taking into

---

[6] Roger Tourangeau and Ting Yan (2007). Sensitive Questions in Surveys. *Psychological Bulletin*, Vol. 133, No. 5, 859-883.

EXHIBIT B

account different rates during the year. These issues can produce misleading and inaccurate hourly-rate estimates.

The *2015 Hourly Rate Sheet* calculates the percent change in medians by a very simple method:

(2015 Median − 2013 Median)/2013 Median = 7.4%

This calculation is not the appropriate method for this application, as it is likely mixing apples with oranges. The mix of individuals in the 2015 survey is not be the same as the mix in the 2013 survey, so this method for calculation the percent increase in medians is biased. It is easy to see that the mix of individuals is different because of the different sample sizes in the two years. There were 4,951 respondents in 2013 and 4,260 in 2015. Some individuals in the 2013 survey clearly did not respond to the 2015 survey. It's probably a good guess that some of the respondents in 2015 did not take the 2013 survey. Consider a worst-case scenario in which the two groups have no overlap, that is, none of those who took the 2013 survey responded to the 2015 survey.  Since we do not know what the median rate was in 2013 for those who took the 2015 survey, it is unreasonable to assume that it must be the same as the 2013 group (and vice versa). The proper way to calculate this estimate is to use only those respondents who appear in both the 2013 and the 2015 surveys. If there is little or no overlap between the two groups, then a reliable estimate cannot be calculated and should be reported as such.

Using the rates in the *Hourly Rate Sheet* report with no adjustments for changes that may have taken place since the survey was administered may be disadvantaging plaintiff attorneys who practice Labor-Employment Law in Texas and who are retained on a contingency basis. The Attorney Survey does not ask certain questions that are needed to fairly determine the fees that these attorneys may charge, such as whether the respondent works on a contingency or an hourly basis in Labor-Employment practice or what plans may be for future changes in fees. The Report itself does not provide projections on rate changes, which would be needed for each of the two years into the future to be of direct use in deciding allowable fees that Labor-Employment contingency-based plaintiff attorneys may charge.

The subsample of Labor-Employment attorney respondents in the Attorney Survey is a confounded mixture of plaintiff attorneys who are retained on a contingency basis and defense and plaintiff attorneys retained on an hourly basis. Fees for plaintiff attorneys working on a contingency basis ideally should be based on responses from attorneys who are not retained on a contingency basis. To see why this may cause an unfair treatment of contingency-based plaintiff attorneys, consider the simple scenario where half the respondents in 2013 are contingency-based plaintiff and half are hourly-based attorneys. Further assume that all charge $300 per hour in 2013. Using the 7.4% rate increase estimated in the Report, the hourly-based attorneys will be charging about $322 in 2015. Without adjustment for changes over time, the contingency-based plaintiff attorneys will be allowed only $300 per hour in 2015 and a major part of 2016 (recall that the Report for 2015 was not published until August 2016). Then in the 2015 report, the median will be given to be $311 per hour. Between August 2016 and (August) 2018, contingency-based plaintiff attorneys will be allowed to charge $311 per hour, but in 2017 the hourly-based attorneys will be charging $346 (and between then and when the report is published may be charging even more) per hour. With passage of time, the gap will widen. If most of the Labor-Employment respondents are contingency-based plaintiff attorneys, then the disadvantage will be greater. Again, setting of the hourly rates that Labor-Employment contingency-based plaintiff attorneys can charge should be based on fee structures of Labor-Employment hourly-based attorneys only.

EXHIBIT B

Again, based on the findings in this review, I recommend that no reliance should be made on the Attorney Survey nor the *Hourly Fact Sheet* report, as currently being conducted, when deciding allowable fees that contingency-based plaintiff attorneys can charge in Labor-Employment cases. The response rates in the Attorney Survey, upon which the *Hourly Fact Sheet* is based, are unacceptably low, the survey includes sensitive questions and the calculations in the *Hourly Report* are not based on accurate methods.  I also recommend that adjustments to the rates over time should be made, but these resources provide no guidance on how the adjustments should made, so additionally references may be needed for this purpose.

EXHIBIT B

# N. Shirlene Pearson, Ph.D.

*Pearson Statistical Consulting & Expert Testimony*
28601 Los Alisos Blvd #2075
Mission Viejo, CA 92692-7920
*(214) 597-1267*
*shirlene.pearson@msn.com*
*http://statisticalexpert.com*

## Education

| | | | | |
|---|---|---|---|---|
| Ph.D. | Statistics | Southern Methodist University | Dallas, TX | 1979 |
| M.S. | Statistics | Southern Methodist University | Dallas, TX | 1975 |
| M.A. | Mathematics | The University of Texas at Austin | Austin, TX | 1973 |
| B.A. | Mathematics | The University of Texas at Austin | Austin, TX | 1971 |

PhD Dissertation: Time Series Analysis, MA Thesis: Algebra,
BA Minor: Biology, BA Minor: Chemistry

## Teaching Experience

Statistics 5304 – Statistical Computing (in SAS)
Statistics 6366 – Statistical Consulting
Statistics 2301 – Statistics for Modern Business Decisions
Statistics 2331 – Introduction to Statistical Methods
SPSS Workshops

## Professional Affiliations and Activities

Member at Large, Section on Statistical Consulting, 2006-2008 Annual Joint Statistical Meetings
Program Chair, Section on Statistical Consulting, 2004 Annual Joint Statistical Meetings
Session Chair, Section on Statistical Consulting, 2004 Annual Joint Statistical Meetings
Session Chair, Section on Statistical Consulting, 2003 Annual Joint Statistical Meetings
President, North Texas Chapter, American Statistical Association (2000-2001)
Vice President and Program Chair, North Texas Chapter, American Statistical Association (1999-2000)
American Statistical Association
Managing Editor, *Selected Tables in Mathematical Statistics* (1983-1990)
Editorial Board, *Selected Tables in Mathematical Statistics* (1974-1990)

**Honorary** - *Sigma Xi, the Scientific Research Society of North America; American Statistical Association Long-Time Member*

EXHIBIT B

PL 0041

**Statistical Consulting Experience (selected examples)**

_Expert Testimony, Litigation and Legal Support_ – review and analysis of tribal claims against the United States of America; analysis of grading system in use for determining first-year students retention at a major law school in Texas, evaluation of survey-based reports issued by the Texas State Bar Assocation,  insurance fraud, employment discrimination, inventory disputes between companies, contract disputes between companies, medical malpractice, criminal probability modeling, sampling and extrapolation for cases involving audits, election fraud; _Education_- analyze library training data of students at twelve major universities and merge into a single report of its effect on student retention and academic success; statistical support for SMU's university curriculum course-level assessments; assisted with exit survey of graduates to assess student satisfaction with curriculum and experiences while attending SMU's Meadows School of Fine Arts; responsible for SMU's online course evaluation reports and analyses of response data; study comparing language acquisition of native English speakers learning Spanish and native Spanish speakers learning English, statistical support for the President's Commission on the Status of Women at SMU, classroom learning outcomes modeling and assessment. _Campus survey manager_ – assist members of  the SMU community with designing, developing, conducting and analyzing surveys (using both Survey Monkey and Qualtrics); _Advertising_ – analyzed factors influencing consumer environmental concerns and green buying patterns; _Anthropology_ - study of migratory patterns of ancient civilization in the Upper Karoo, South Africa; _Art History_ – analyzed acoustics data of the effect of tapestry on the walls of the Sistine Chapel; _Corporate Communications & Public Affairs_ – provided statistical analysis support for a study of voters which assessed their attitudes toward candidates before and after presidential debates; _Biostatistics and Clinical Trials_ – degenerative loss of visual function, chemotherapy study, eligibility analysis for hospice intervention, catheter intervention study, analysis of psychiatric instruments, micro-array research, olfactory capacity modeling,  physical therapy data analysis and modeling, brainwave responses of patients with communication disorders, cardiac rehabilitation study, effectiveness of cosmetic surgical procedures, cardiovascular risk study of a common type of antibiotic used in hospitals; _Accident and  Injury_ – review of physician treatment and recommendations for a employee injured at a major wholesale retailer and the employers unfair dismissal of employee; _Business Statistics_ – predictive analytics, financial analysis modeling, credit risk modeling, sampling plans for auditing of large databases or inventories, forecasting methodology for real-estate analysis, sampling plans for customer satisfaction surveys, healthcare insurance subscriber trends;  _Communications_ - study comparing preference for surround sound versus traditional cinema sound technology.

**Statistical Computing**

Strong background in implementing software applications including tool development in both UNIX and Windows environments: SPSS, Statistica, Visual Basic, Excel macros, SAS, Qualtrics survey software, R, graphical programming, the UNIX operating system, ksh/csh/sh, awk/gawk, Javascript and html/xhtml, Access, FORTRAN, RATFOR, S interface language, Splus, Filemaker Pro.

EXHIBIT B

PL 0042

**EXPERIENCE SUMMARY**

**Southern Methodist University** *Dallas, TX 1999 - present*

       Adjunct Professor, Department of Statistical Science
       Statistical Consulting, Office of Assessment & Accreditation
       Statistical Consulting and Research Support, Center for Teaching Excellence
       Statistical Consulting and Research Support, Academic Technology Services
       Director, Center for Statistical Consulting and Research, Department of Statistical Science
       Addl: SMU President's Commission on the Status of Women, 2011-2014

**MCI WorldCom Telecommunications** *Dallas, TX 1997 - 1999*

       Sr. Engineer II, Network Design Standards, Network Reliability and Performance

**The Applied Research Laboratories, The University of Texas at Austin** *Austin, TX 1991 - 1997*

       Research Scientist Associate V, Telecommunications Systems & Network Modeling and Simulation, Radio Frequency Propagation Analysis and Optimization Methods, Radio Frequency Mission Planner
       System Test Branch Manager, Fire Support Artillery Test System

**Bell Communications Research** *Red Bank, NJ 1984 - 1989*

       District Manager, Operator Systems Analysis
       District Manager, Analysis Systems District
       Member of Technical Staff, Software Systems and Software Quality Analytical Methods District
       Member of Technical Staff, Switching Processor and Field Performance District
       Additional:
          Bellcore Software Metrics Steering Committee Member
          Center Technical Organization Contact for Ph.D./M.S. campus hires
          Center representative to the Area Peer Group
          Center alternate representative to Bellcore's Early Career Advisory Program Committee
          Center Management Committee Member - address career development issues
          Division Education and Training Coordinator
          Session Chair, Army Research Office Workshop on System Reliability
          Developed two modules of Bellcore's Reliability Workshop

**Bell Telephone Laboratories** *Naperville, IL 1978 - 1983*

       Member of Technical Staff, System Analysis and Human Factors Group
       Member of Technical Staff, Network and Processor Utilization Group
       Additional:  Bell Telephone Laboratories Statistics Day Committee Member (1980 - 1983)

**Southern Methodist University** *Dallas, TX 1973 - 1978*

       Department of Statistics
          Research Assistant, Office of Naval Research Grant
          Teaching Assistant
          Teaching Instructor

**Texas Instruments** *Dallas, TX 1976 (summer student intern)*

       Ecological Services Group, Statistical Consultant/Analyst

EXHIBIT B

# PUBLICATIONS

1. Pearson, N. Shirlene. *Greater Western Library Alliance Library Training Study*, January 31, 2017. Unpublished manuscript commissioned by GWLA and provided to all library deans of the universities who are members of GWLA.

2. Melissa Bowles-Terry, Head of Educational Initiatives, UNLV Libraries; Zoltán Szentkirályi, Director of Assessment, SMU CUL; N. Shirlene Pearson, PhD, Pearson Statistical Consulting & Expert Testimony. *The Impact of Library Instruction Programs on Student Success and Retention: A Multi-Institution Study,* scheduled for presentation on February 27, 2017 at a GWLA conference.

3. Dennis R. Hoffman, Ph.D., Dianna K. Hughbanks-Wheaton, M.S., Ph.D., Rand Spencer, M.D., Gary E. Fish, M.D., N. Shirlene Pearson, Ph.D., Yi-Zhong Wang Ph.D., Martin Klein, M.S., Alison Takacs, B.S., Kirsten G. Locke, R.N., and David G. Birch, Ph.D. *Docosahexaenoic Acid Slows Visual Field Progression in X-Linked Retinitis Pigmentosa: Ancillary Outcomes of the DHAX Trial*. Investigative Opthalmology & Visual Science, October 2015, Vol. 56, No. 11.

4. Dianna Wheaton, David Birch, Gary Fish, Rand Spencer, N. Shirlene Pearson, Alison Takacs, and Dennis Hoffman, *Safety Assessment of Docosahexaenoic Acid (DHA) Supplementation in a 4-Year Randomized Clinical Trial in X-linked Retinitis Pigmentosa (XLRP)*. Investigative Opthalmology & Visual Science, June 24, 2014.

5. Dennis R. Hoffman, Ph.D., Dianna K. Hughbanks-Wheaton, Ph.D., N. Shirlene Pearson, Ph.D., Gary E. Fish, M.D., Rand Spencer, M.D., Alison Takacs, B.S., Martin Klein, M.S., Kirsten G. Locke, R.N., and David G. Birch, Ph.D., *A 4-year randomized, placebo-controlled clinical trial of DocosaHexaenoic Acid in X-linked retinitis pigmentosa: The DHAX Trial*. JAMA Ophthalmology, May 7, 2014.

6. Dennis Hoffman, Dianna Hughbanks-Wheaton, Gary Fish, Rand Spencer, Shirlene Pearson, Alison Takacs, Martin Klein, Kirsten Locke, David Birch. *High Dose Docosahexaenoic Acid in X-linked Retinitis Pigmentosa  (The DHAX Trial)  A 4-Year Randomized, Controlled Clinical Trial*. Annual meeting of The Association for Research in Vision and Ophthamology, May 8, 2014. Presenters: Hoffman, Wheaton, Spencer and Fish.

7. Kotsanis, Constantine A., MD, MD(H), CCN, Marge Woodward, and N. Shirlene Pearson, PhD, *IPTLD Quality of Life Broad Study*, 2012 Tenth Annual International IPT/IPTLD Integrative Cancer Conference. April 27-28, 2012.

8. Pearson, N. Shirlene, *Introduction to Clickers & Test Questions Using Them (assessing classroom learning outcomes in real time)*, Southwest Regional Conference Educause 2010: Uncommon Thinking for the Common Good. February 17, 2010.

9. Pearson, N. Shirlene, *Introduction to Clickers & Test Questions Using Them (assessing classroom learning outcomes in real time)*, Southwest Regional Conference Educause 2010: Uncommon Thinking for the Common Good. February 17, 2010.

10. Numerous confidential reports in support of projects relating to statistical expert testimony, statistical litigation support and other statistical consulting activities.

11. Pearson, N. S. *SONET Network Availability Models*, MCI WorldCom, confidential technical document, 1998.

EXHIBIT B

PL 0044

12. Pearson, N. S. *Dual Ring Availability Analysis*, MCI WorldCom, confidential technical analysis document, 1998.

13. Pearson, N. S. *Availability Analysis Tool Requirements*, MCI WorldCom, confidential technical document, 1998.

14. Pearson, N. S. *OC-48 Line Performance Study*, MCI WorldCom, confidential study, 1997.

15. Pearson, N. S. *Network Reduction*, Applied Research Laboratories, The University of Texas at Austin. Internal document, 1997.

16. Pearson, N. S. *Ellipsoidal Geodesy*, Applied Research Laboratories, The University of Texas at Austin. Unpublished manuscript, 1995.

17. Pearson, N. S. *Dynamic Allocation of Probability Thresholds for Radio Frequency Mission Planner Acquisition Missions*, Applied Research Laboratories, The University of Texas at Austin, White Paper, 1995.

18. Pearson, N. S. and P. Welton, *Survey of Modern Optimization Methods*, Applied Research Laboratories, The University of Texas at Austin, Lab Report, 1994.

19. Chaddha, R. L., A. W. King, and N. S. Pearson, *Providing Buyer Feedback on Digital Switch Field Performance*, IEEE Journal on Selected Areas in Communications, October, 1988.

20. Chaddha, R. L., A. W. King, and N. S. Pearson, *Providing Buyer Feedback on Digital Switch Field Performance*, IEEE International Conference on Communications, June 7-10, 1987. Presenter: N. S. Pearson.

21. Pearson, N. S. and G. G. Brush, *Framework for Software-Quality Life-Cycle Data and Metrics*, Bell Communications Research, Technical Memorandum, TM-TSY-008710, March 13, 1987.

22. Pearson, N. S., Several restricted publications of Reliability Review Forum activities for a major telecommunications supplier and field performance studies of their large switching system. Bell Communications Research, 1984 - 1986.

23. Pearson, N. S., Several Bell Communications Research Technical Analysis Reports of operator services and telecommunications switching systems suppliers, Bell Communications Research, 1986 - 1989.

24. Pearson, N. S., *4 ESS - Preliminary Guidelines for Memory and Disk Engineering for 4E9 Features*, Bell Telephone Laboratories, Memorandum for File, July 22, 1983.

25. Pearson, N. S., *4E9/APS Disk Engineering*, Bell Telephone Laboratories, Private Communiqué, July 15, 1983.

26. Pearson, N. S., *Proposed Expansion of S Graphics*, Bell Telephone Laboratories, Memorandum for File, July 14, 1982.

27. Pearson, N. S. and J. L. Santee, *T/C CPT Analysis System Measurement Requirements*, Bell Telephone Laboratories, Memorandum for File, April 28, 1982.

28. Pearson, N. S., *No. 2BE3 Main Processor Simulator and Study Results*, Bell Telephone Laboratories, Memorandum for File, December 11, 1981.

29. Pearson, N. S., *No. 2BE3-RSS Traffic Measurements Requirements*, Bell Telephone Laboratories, Memorandum for File, 1981.

30. Pearson, N. S., *2BE3 Post-cutover Capacity Determination - Requirements for EADAS/NORGEN*, Bell Telephone Laboratories, Memorandum for File, 1981.

EXHIBIT B

PL 0045

31. Pearson, N. S., *2B-EF-2 and 2BE3 Register Requirements for EADAS/NORGEN*, Bell Telephone Laboratories, Memorandum for File, 1981.

32. Pearson, N. S., *No. 2B-EF-2 Post-cutover Processor Capacity - Worksheets for a Semi-automated Procedure*, Bell Telephone Laboratories, Memorandum for File, 1981.

33. Pearson, N. S., *No. 2B-EF-2 Post-cutover Processor Capacity Determination*, Bell Telephone Laboratories, Memorandum for File, 1981.

34. Pearson, N. S., *No. 2B-EF-1 Post-cutover Processor Capacity Determination*, Bell Telephone Laboratories, Memorandum for File, 1981.

35. Pearson, N. S., *No. 2ESS Percent Call Carrying Capacity*, Bell Telephone Laboratories, Memorandum for File, 1980.

36. Pearson, N. S., *Proposed Revision of Line Scanning Strategy for No. 2B ESS*, Bell Telephone Laboratories, Memorandum for File, August 13, 1980.

37. Pearson, N. S., *Post-cutover Processor Capacity Determination - No. 2B ESS Manual Procedure*, Bell Telephone Laboratories, Memorandum for File, March 28, 1980.

38. Pearson, N. S., *Algorithmic Call Type Definitions for Current Local ESSs and Measurement Specifications*, Bell Telephone Laboratories, Memorandum for File, December 12, 1979.

39. Pearson, N. S., *Generating Telephone Traffic*, Bell Telephone Laboratories, Private Communiqué, June 18, 1979.

EXHIBIT B                                          PL 0046

# EXHIBIT A-5

# UNITED STATES DISTRICT COURT
## Western District of Texas
## Midland/Odessa Division

| | | |
|---|---|---|
| Joseph Hobbs and Drake Feeney, | § | |
| individually and on behalf of all | § | |
| others similarly situated, | § | |
| | § | CA No.: 17-CV-00030-DC |
| Plaintiffs, | § | |
| v. | § | |
| | § | Collective Action |
| Petroplex Pipe and Construction, | § | |
| Inc. | § | |
| | § | |
| Defendant. | § | |

### HOLLY B. WILLIAMS'S DECLARATION IN SUPPORT OF ATTORNEYS' FEES

1.      "My name is Holly B. Williams, and I am over eighteen (18) years of age, have

personal knowledge of the matters set forth herein, and am competent to make this declaration.

I make this declaration pursuant to the provisions of 28 U.S.C. Sec. 1746.

2.      I graduated from Rice University in 1989, with a Bachelor's Degree in English and

Political Science. I obtained my J.D. from the University of Texas School of Law in 1993. I also

received a Master's Degree in Public Affairs from the LBJ School of Public Affairs at the University

of Texas.

3.      I am an attorney licensed to practice law in the State of Texas. I have been licensed

in Texas since 1993. I have also been licensed to practice law in the State of New Mexico since

2001. I have been admitted to practice in the U.S. District Court for the Northern, Western, and

Southern Districts of Texas, the U.S. Court of Appeals for the Fifth Circuit, and the U.S. Supreme

Court. I have been Board Certified in Labor and Employment Law by the Texas Board of Legal

Specialization since 2000.  To my knowledge, I am the only lawyer who is Board Certified in Labor and Employment Law in the Midland-Odessa area.  I routinely receive calls from potential clients within a 150-200 mile radius of Midland-Odessa, including Lubbock, San Angelo, Big Spring, Monahans, Pecos, and the surrounding areas.

4.      From 1993 to 2003, I was an associate, and then a partner, in the Turner & Davis firm, subsequently, Turner Davis & Gerald, in Midland, Texas (now Davis, Gerald & Cremer).

5.      I founded Williams Law Firm, PC is January 2003. I am also a member of the Texas Bar Foundation, and the College of the State Bar of Texas. I served as President of the Midland County Bar Association in 2000-2001. I am a member of the National Employment Lawyers Association, the Texas Employment Lawyers Association, the American Immigration Lawyers Association, the American Bar Association, the Society for Human Resource Management (SHRM), and the Permian Basin SHRM. I presently serve as Treasurer of the Texas Employment Lawyers Association.

6.      For nine years, I served on the State Bar of Texas Pattern Jury Charge Committee for the Business Consumer Insurance Employment Volume.

7.      My current hourly rate for billable work is $425. I regularly charge and collect that amount from clients who retain me on an hourly basis. I believe this rate to be reasonable and customary for attorneys of my experience and specialization in the Midland-Odessa area.

8.      I understand that Plaintiffs' counsel in the above-styled lawsuit, have asked the Court to approve the following rates:

> a.      $425 for Chris R. Miltenberger, whom I know to be an attorney in practice in the area of employment law for 26 of his 36-year legal career, and who specializes in litigating wage and hour cases throughout the

United States and here, in the Western District;[1]

b.      $350 for Rebecca Miltenberger, whom I know to be an attorney in practice in the area of employment law for more than 11 years, and who has extensive experience in wage and hour cases throughout the United States and here, in the Western District; [2]

c.      $350 for Steve Ashley, whom I know to be an attorney in practice for 33 years and who has extensive experience here, in the Western District; and

d.      $110 for paralegals.

9.      Based on my experience and knowledge of the reasonable and customary rates for attorneys and paralegals in the Western District of Texas, and specifically within the Midland-Odessa area, the hourly rates sought by Plaintiffs' counsel are well within what is reasonable and customary for legal professionals of similar experience and specialization in this area.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing is true and correct."

Dated: _3/27/19_

_Holly B. Williams_
Holly B. Williams

---

[1] I know Mr. Miltenberger personally and by reputation, and I have reviewed his Declaration submitted in support of his application for fees.

[2] I have reviewed Mr. Miltenberger's Declaration regarding Ms. Miltenberger's and Mr. Ashley's experience, and I have reviewed their respective vitaes attached thereto.  I know Mr. Ashley to be a member of the local bar.

# EXHIBIT A-6



# STATEMENT

STATEMENT NUMBER:  277                DUE DATE:  MARCH 26, 2019
STATEMENT DATE:  MARCH 26, 2019       PAYMENT TERMS:  DUE ON RECEIPT


FROM:  The Law Office of Chris R. Miltenberger, PLLC
        1360 N. White Chapel
        Suite 200
        Southlake, TX 76092

TO:  Joseph Hobbs

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|------|----------|-------------|-------|------|--------|
| NOV-16-16 | SA | Office conference with Joseph Hobbs regarding potential FLSA claim, outline burden of proof and facts necessary to substantiate, overview regarding his employer and how they treat contract workers and whether they pay overtime, general discussions regarding how they are directed to charge for services and materials supplied; general research under 29 U. S. C. Section 201 et seq. Overview as to whether they would be classed as employees vs. independent contractors. | 2.20 | $350.00 | $770.00 |
| NOV-30-16 | SA | Teleconference with Joseph Hobbs regarding additional questions about litigation, how long it will take to resolve, whether the workers will have to testify, factors to consider as to whether they would be employees vs. an independent contractor. | 0.50 | $350.00 | $175.00 |
| DEC-01-16 | SA | Teleconference with Chris Miltenberger regarding potential new claim, overview regarding factual issues regarding employment and my belief that it would fall under purview of FLSA claim, setting up time to discuss with potential client. | 0.30 | $350.00 | $105.00 |
| JAN-05-17 | CRM | Conversations with J. Hobbs re potential lawsuit. | 0.75 | $425.00 | $318.75 |
| JAN-06-17 | CRM | Conversation with D. Feeney re lawsuit. | 0.40 | $425.00 | $170.00 |
| JAN-06-17 | CRM | Preparation of co-counsel agreement. | 0.25 | $425.00 | $106.25 |

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|------|----------|-------------|-------|------|--------|
| JAN-20-17 | SA | Office Conference with Joseph Hobbs, overview regarding participants, that he and Drake will be primary and lead Plaintiff's while the others will necessarily have to provide consent. Confirmation as to his understanding of timeliness and how far back we can go to claw back overtime and to go back 3 years, we would need a willful finding by Court so they need to make up mind as to being in or out. | 1.00 | $350.00 | $350.00 |
| JAN-24-17 | CRM | Preparation of Contingency Fee agreement for Hobbs and Feeney. | 0.40 | $425.00 | $170.00 |
| JAN-24-17 | CRM | Preparation of Complaint. | 2.00 | $425.00 | $850.00 |
| JAN-26-17 | CRM | Telephone conversation with D. Feeney. | 0.30 | $425.00 | $127.50 |
| FEB-01-17 | SA | Teleconference with Joseph Hobbs regarding contract and how matters will develop going forward along with requesting the names and contact information for those additional potential Plaintiffs. Emails with Co Counsel regarding Joseph Hobbs signing contract and other matters pertaining to additional parties, contact information, primary plaintiffs and evidence regarding same. | 0.70 | $350.00 | $245.00 |
| FEB-06-17 | CRM | Revisions to Complaint at suggestion of J. Hobbs. | 0.25 | $425.00 | $106.25 |
| FEB-08-17 | CRM | Sending Consent to Join forms to potential plaintiffs. | 0.50 | $425.00 | $212.50 |
| FEB-09-17 | CRM | Preparation of documents for filing with the Court to initiate lawsuit. | 2.50 | $425.00 | $1,062.50 |
| FEB-11-17 | CRM | Email correspondence with Group and J. Hobbs regarding others joining and preparation of explanatory materials. | 0.50 | $425.00 | $212.50 |
| FEB-11-17 | SA | Receipt and Review of Complaint as filed, overview with co-counsel regarding Consent forms to forward and responding to questions from Joseph Hobbs regarding additional parties and how that would, if at all, affect his individual case.Email correspondence with Client and Co-Counsel regarding "Costs" and potential for Plaintiff's to be responsible for costs for litigation in the event of adverse finding, review of case law regarding same, and agreeing to terms. | 1.60 | $350.00 | $560.00 |

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|------|----------|-------------|-------|------|--------|
| FEB-13-17 | SA | Receipt, review and approval of contingency fee agreement as amended. | 0.30 | $350.00 | $105.00 |
| MAR-13-17 | RKM | Review file to begin to prepare Motion for Certification and Notice and research Western District Law for same (6.4); | 6.40 | $350.00 | $2,240.00 |
| MAR-13-17 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -2.00 | $350.00 | ($700.00) |
| MAR-14-17 | RKM | Continue Motion for Certification and Notice and research of Western District Law for same (3.2); Prepare 4 declarations in support of same (3.6); | 6.80 | $350.00 | $2,380.00 |
| MAR-14-17 | SA | Email correspondence regarding process server and generating subpoena for depositions. | 0.30 | $350.00 | $105.00 |
| MAR-17-17 | RKM | Revise Motion for Certification and Notice and revise 4 declarations in support of same (1.6); | 1.60 | $350.00 | $560.00 |
| MAR-20-17 | RKM | Finalize Motion for Certification and Notice and 4 declarations in support of same (3.4); | 3.40 | $350.00 | $1,190.00 |
| MAR-28-17 | CRM | Draft and research for Reply Brief to Motion for Notice. | 2.00 | $425.00 | $850.00 |
| APR-03-17 | RKM | Draft and Finalize Revised Notice and Motion for Alternative Language on Notice (5.0); | 5.00 | $350.00 | $1,750.00 |
| APR-18-17 | Paralegal | Revise List for Notice to Potential Plaintiffs (.3) | 0.30 | $110.00 | $33.00 |
| APR-24-17 | Paralegal | Prepare Notice Documents and packages for Mailing (2.1); | 2.10 | $110.00 | $231.00 |
| APR-26-17 | Paralegal | Prepare Notice of Notice Mailing (.2); | 0.20 | $110.00 | $22.00 |
| MAY-02-17 | CRM | Filing of withdrawal of consent of Dixon. | 0.25 | $425.00 | N/C |
| MAY-04-17 | CRM | Filing consent of Allianz | 0.25 | $425.00 | N/C |
| MAY-04-17 | CRM | Filing consent of Sigler | 0.25 | $425.00 | N/C |
| MAY-08-17 | CRM | Filing consent of Orozco | 0.25 | $425.00 | N/C |
| MAY-17-17 | CRM | Filing consent of Gonzalez | 0.25 | $425.00 | N/C |
| JUN-27-17 | Paralegal | Prepare List of Opt-ins with information regarding work dates (.7); | 0.70 | $110.00 | $77.00 |
| JUL-05-17 | RKM | Review file, conduct research for drafting of written discovery to Defendant on several issues about independent contractor status (2.2); | 2.20 | $350.00 | $770.00 |

STATEMENT NUMBER: 277

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|
| JUL-06-17 | RKM | Continue research for drafting of written discovery to Defendant on several issues about independent contractor status (1.1); Begin draft of questionnaire for clients regarding work environment and employee status (.4); | 1.50 | $350.00 | $525.00 |
| JUL-07-17 | RKM | Continue draft of questionnaire for clients regarding work environment and employee status based on welder cases in Texas and begin drafting discovery for Defendant (1.5); | 1.50 | $350.00 | $525.00 |
| JUL-10-17 | CRM | Review of and revisions to plaintiffs' discovery requests. | 1.00 | $425.00 | $425.00 |
| JUL-10-17 | RKM | Continue draft of discovery for Defendant (1.0); | 1.00 | $350.00 | $350.00 |
| JUL-10-17 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -1.00 | $350.00 | ($350.00) |
| JUL-11-17 | CRM | Final review and service of discovery on Defendant. | 1.00 | $425.00 | $425.00 |
| AUG-10-17 | CRM | Receipt and initial review of discovery responses. | 0.25 | $425.00 | $106.25 |
| AUG-14-17 | CRM | Review of compensation data produced by Defendant. | 1.50 | $425.00 | $637.50 |
| AUG-15-17 | CRM | Research on motion to compel attorney conversations with regard to good faith. | 1.00 | $425.00 | $425.00 |
| AUG-15-17 | CRM | Conversations with Hobbs regarding compensation data. Review of same in preparation of settlement demand. Preparation of settlement demand. | 2.00 | $425.00 | $850.00 |
| AUG-23-17 | CRM | Review of Defendant's discovery requests. Correspondence to all Plaintiffs re same and requirement to respond to discovery . | 1.00 | $425.00 | $425.00 |
| AUG-24-17 | CRM | Review of discovery responses of Defendant (1.6). Preparation of letter to defense counsel re motion to compel. Telephone conversation with Plaintiff re Defendant's discovery requests (.4) | 2.00 | $425.00 | $850.00 |
| SEP-14-17 | RKM | Begin preparation of master answers to Defendant's Discovery (.7); | 0.70 | $350.00 | $245.00 |
| SEP-15-17 | RKM | Review answers from Defendant for comparison to prepare master discovery answers to Defendant's discovery (.8); | 0.80 | $350.00 | $280.00 |

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|
| SEP-19-17 | RKM | Continue preparation of master answers and objections to Defendant's Discovery (1.3); | 1.30 | $350.00 | $455.00 |
| SEP-20-17 | CRM | Conversation with Plaintiffs regarding responses to discovery requests. | 0.50 | $425.00 | $212.50 |
| SEP-20-17 | RKM | Continue preparation of master answers and objections to Defendant's Discovery (4.1); | 4.10 | $350.00 | $1,435.00 |
| SEP-20-17 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -2.05 | $350.00 | ($717.50) |
| SEP-21-17 | RKM | Continue preparation of master answers and objections to Defendant's Discovery and draft emails to each Plaintiff requesting specifics to answers to interrogatories (4.2); | 4.20 | $350.00 | $1,470.00 |
| SEP-21-17 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -1.00 | $350.00 | ($350.00) |
| SEP-26-17 | Paralegal | Prepare final answers to Defendant's discovery for each Plaintiff based on information given from them and objections made (2.5); | 2.50 | $110.00 | $275.00 |
| SEP-26-17 | RKM | Draft emails to each Plaintiff requesting specifics (.5); | 0.50 | $350.00 | $175.00 |
| OCT-04-17 | RKM | Finalize Answers to Discovery for certain Plaintiffs based on information given by them (1.7); | 1.70 | $350.00 | $595.00 |
| OCT-12-17 | RKM | Interview a plaintiff and Finalize Answers to Discovery for him based on information given (.8); | 0.80 | $350.00 | $280.00 |
| OCT-17-17 | RKM | Review relevant case law on new amendments to Rule 26 to begin drafting Motion to Compel answer to RFP 32 and begin drafting same (1.4); | 1.40 | $350.00 | $490.00 |
| OCT-18-17 | RKM | Continue to review relevant case law on new amendments to Rule 26 and other case law in order to draft Motion to Compel and continue drafting same (5.2); | 5.20 | $350.00 | $1,820.00 |
| OCT-18-17 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -2.00 | $350.00 | ($700.00) |
| OCT-19-17 | RKM | Based on amended responses, revise the Motion to Compel (1.0); | 1.00 | $350.00 | $350.00 |

STATEMENT NUMBER: 277

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|------|----------|-------------|-------|------|--------|
| NOV-06-17 | CRM | Revisions to and filing Plaintiffs' Motion to Compel. | 0.75 | $425.00 | $318.75 |
| NOV-06-17 | CRM | Preparation of draft of response to motion to dismiss | 2.00 | $425.00 | N/C |
| NOV-07-17 | CRM | Final draft of and filing of response to motion to dismiss. | 1.00 | $425.00 | N/C |
| NOV-15-17 | CRM | Preparation of reply brief on Plaintiff's Motion to Compel. | 1.00 | $425.00 | $425.00 |
| NOV-16-17 | RKM | Finalize Reply Brief to Response to Motion to Compel Answer to Plaintiff's RFP 32 (.6); | 0.60 | $350.00 | $210.00 |
| NOV-27-17 | RKM | Prepare response to RFPs (.5); | 0.50 | $350.00 | $175.00 |
| JAN-05-18 | RKM | Begin Research for MSJ in order to draft deposition questions (1.1); | 1.10 | $350.00 | $385.00 |
| JAN-24-18 | RKM | Continue Research for MSJ in order to draft deposition questions (1.2); | 1.20 | $350.00 | $420.00 |
| JAN-29-18 | RKM | Continue Research for MSJ in order to draft deposition questions (1.2); | 1.20 | $350.00 | $420.00 |
| JAN-30-18 | RKM | Continue Research for MSJ in order to draft deposition questions and draft deposition outline (4.3); | 4.30 | $350.00 | $1,505.00 |
| JAN-31-18 | RKM | Draft and finalize deposition outline (2.5); | 2.50 | $350.00 | $875.00 |
| FEB-01-18 | Paralegal | Prepare certified mailing to five Plaintiffs regarding discovery answers or possible dismissal (.5); | 0.50 | $110.00 | N/C |
| FEB-07-18 | SA | Receipt and Review of depo notices of Plaintiffs. | 0.30 | $350.00 | $105.00 |
| FEB-10-18 | CRM | Preparation of materials for Plaintiffs' depositions. | 2.00 | $425.00 | $850.00 |
| FEB-11-18 | CRM | Meeting with Plaintiffs in preparation for depositions. | 3.00 | $425.00 | $1,275.00 |
| FEB-11-18 | CRM | Travel to Midland for depositions. | 6.00 | $425.00 | $2,550.00 |
| FEB-11-18 | CRM | Travel adjustment (reduced travel by 50%). | -3.00 | $425.00 | ($1,275.00) |
| FEB-12-18 | CRM | Participation in depositions of plaintiffs (7). Review of documents produced by Defendant for use in depositions of Defendant. (2.5) | 9.50 | $425.00 | $4,037.50 |
| FEB-13-18 | CRM | Participation in deposition of plaintiff Humphrey (2). | 2.00 | $425.00 | $850.00 |
| FEB-13-18 | CRM | Return travel to Dallas. | 5.00 | $425.00 | $2,125.00 |

STATEMENT NUMBER: 277

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|------|----------|-------------|-------|------|--------|
| FEB-13-18 | CRM | Travel adjustment (reduced travel by 50%). | -2.50 | $425.00 | ($1,062.50) |
| MAR-13-18 | RKM | Review Research for MSJ, outline MSJ and begin review of plaintiffs' depositions to prepare facts of MSJ (2.3); | 2.30 | $350.00 | $805.00 |
| MAR-14-18 | RKM | Review plaintiffs' depositions to prepare facts of MSJ (1.9); | 1.90 | $350.00 | $665.00 |
| MAR-14-18 | SA | Emails with Co counsel regarding depo notices of Defendants and their representatives, confirming subpoenas to be issues and orchestrating court reporter, etc. | 0.30 | $350.00 | $105.00 |
| MAR-20-18 | RKM | Begin draft of MSJ (.8); | 0.80 | $350.00 | $280.00 |
| APR-15-18 | RKM | Review discovery for deposition preparation (.4). | 0.40 | $350.00 | $140.00 |
| APR-17-18 | CRM | Preparation for depositions of Hardcastle and Bridges. | 4.00 | $425.00 | $1,700.00 |
| APR-17-18 | RKM | Review possible exhibits for preparation for Defendant's corporate representative's deposition (1.6); | 0.60 | $350.00 | $210.00 |
| APR-18-18 | CRM | Participation in deposition of Hardcastle (3.5); Preparation for deposition of Bridges (2.5). | 6.00 | $425.00 | $2,550.00 |
| APR-18-18 | CRM | Travel to Midland for depositions. | 5.00 | $425.00 | $2,125.00 |
| APR-18-18 | CRM | Travel adjustment (reduced travel by 50%). | -2.50 | $425.00 | ($1,062.50) |
| APR-19-18 | CRM | Participation in deposition of Bridges (7) | 7.00 | $425.00 | $2,975.00 |
| APR-19-18 | CRM | Return travel to Dallas. | 5.00 | $425.00 | $2,125.00 |
| APR-19-18 | CRM | Travel adjustment (reduced travel by 50%). | -2.50 | $425.00 | ($1,062.50) |
| MAY-03-18 | CRM | Review of depositions of Company witnesses. | 3.00 | $425.00 | $1,275.00 |
| MAY-03-18 | RKM | Continue review of deposition testimony (Feeney and Humphrey) for declarations and MSJ (2.9); Begin review of case law and being drafting of MSJ (5.6); | 8.50 | $350.00 | $2,975.00 |
| MAY-03-18 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -2.00 | $350.00 | ($700.00) |

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|
| MAY-04-18 | RKM | Continue review of deposition testimony (HardCastle and Bridges) for MSJ (4.0); continue review of case law and continue drafting of MSJ (2.0); Begin draft of declarations (1.9); | 7.90 | $350.00 | $2,765.00 |
| MAY-04-18 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -2.00 | $350.00 | ($700.00) |
| MAY-05-18 | CRM | Preparation of damage calculations. Review of standards for liquidated damages and three year SOL. | 2.00 | $425.00 | $850.00 |
| MAY-06-18 | RKM | Continue review of all deposition testimony, interrogatory testimony and case law to draft declarations and fact portion of MSJ and continue draft of declarations (6.0); | 6.00 | $350.00 | $2,100.00 |
| MAY-07-18 | RKM | Complete drafts of declarations (4.3) for MSJ; Start draft facts and arguments in body of brief for same (8.0); | 12.30 | $350.00 | $4,305.00 |
| MAY-08-18 | Paralegal | Pull deposition excerpts and other exhibits for MSJ, begin to drop in citations to Exhibits (7.0); | 7.00 | $110.00 | $770.00 |
| MAY-08-18 | RKM | Continue draft and revisions to arguments in body of brief of MSJ (12.5); | 12.50 | $350.00 | $4,375.00 |
| MAY-08-18 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -4.50 | $350.00 | ($1,575.00) |
| MAY-09-18 | Paralegal | Pull deposition excerpts and other exhibits for MSJ, drop in citations to Exhibits for Facts section and brief itself and finalize brief, and exhibits, etc. for filing (8.3); | 8.30 | $110.00 | $913.00 |
| MAY-09-18 | RKM | Finalize body of brief of MSJ (2.0); | 2.00 | $350.00 | $700.00 |
| MAY-17-18 | RKM | Review Defendant's MSJ for response and cited law (2.5); Complete drafts of declarations (4.3) for MSJ; Start draft facts and arguments in body of brief for same (8.0); | 2.50 | $350.00 | $875.00 |
| MAY-20-18 | RKM | Continue review of case law cited by Defendant in MSJ and research law for Response (1.0); | 1.00 | $350.00 | $350.00 |
| MAY-21-18 | RKM | Begin drafting of Response to Defendant's MSJ (9.9); | 9.90 | $350.00 | $3,465.00 |
| MAY-21-18 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -3.00 | $350.00 | ($1,050.00) |

STATEMENT NUMBER: 277

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|
| MAY-22-18 | CRM | preparation of and filing of response to motion for costs with regard to Bouman. | 0.75 | $425.00 | $318.75 |
| MAY-22-18 | RKM | Continue drafting and revising Response to Defendant's MSJ and draft declarations therefore (6.6); | 6.60 | $350.00 | $2,310.00 |
| MAY-23-18 | Paralegal | Pull exhibits and drop cites in Response to Defendant's MSJ (2.5); | 2.50 | $110.00 | $275.00 |
| MAY-23-18 | RKM | Finalize Response to Defendant's MSJ (6.7); | 6.70 | $350.00 | $2,345.00 |
| MAY-29-18 | CRM | Preparation of motion to strike portions of Defendant's summary judgment response evidence. | 2.00 | $425.00 | $850.00 |
| MAY-29-18 | RKM | Review Defendant's response and draft reply to response to MSJ (5.9); | 5.90 | $350.00 | $2,065.00 |
| MAY-30-18 | RKM | Draft and finalize with cites Plaintiffs' reply to response to MSJ (8.2); finalize Motion to Strike D's response evidence for filing (.2); | 8.40 | $350.00 | $2,940.00 |
| JUN-19-18 | RKM | Review Motion to File Supplemental SJ Evidence for Response and research same (1.1); | 1.10 | $350.00 | $385.00 |
| JUN-25-18 | SA | Receipt and Review of Court's finding on Motion for Summary Judgment. | 0.40 | $350.00 | $140.00 |
| JUL-06-18 | RKM | Review of Federal Jury Charge and other requirements for Petroplex Jury Charge preparation. | 0.80 | $350.00 | $280.00 |
| JUL-09-18 | RKM | Draft portions of Jury Charge (2.2); | 2.20 | $350.00 | $770.00 |
| JUL-16-18 | CRM | Preparation of Motion in Jury Instructions, Limine and Voir Dire questions. | 3.50 | $425.00 | $1,487.50 |
| JUL-19-18 | CRM | Preparation of pre-trial materials. | 4.50 | $425.00 | $1,912.50 |
| JUL-20-18 | CRM | Preparation of pre-trial materials. | 12.50 | $425.00 | $5,312.50 |
| JUL-27-18 | CRM | Preparation of objections to Defendant's exhibits. Preparation of response to Defendant's Motion in Limine. | 3.25 | $425.00 | $1,381.25 |
| AUG-02-18 | CRM | Preparation for pre-trial hearing. | 2.00 | $425.00 | $850.00 |
| AUG-03-18 | CRM | Preparation for and participation in Pre-Trial Hearing. | 3.00 | $425.00 | $1,275.00 |
| AUG-03-18 | CRM | Travel to and from Midland for pre-trial hearing. | 7.00 | $425.00 | $2,975.00 |
| AUG-03-18 | CRM | Travel adjustment (reduced travel by 50%). | -3.50 | $425.00 | ($1,487.50) |

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|
| AUG-27-18 | CRM | Initial draft of Findings of Fact and Conclusions of Law. | 1.50 | $425.00 | $637.50 |
| AUG-28-18 | RKM | Prepare Conclusions of Law for trial (4.0); | 4.00 | $350.00 | $1,400.00 |
| AUG-29-18 | RKM | Continue Conclusions of Law for trial (1.1); | 1.10 | $350.00 | $385.00 |
| AUG-30-18 | RKM | Continue Conclusions of Law for trial (1.8); | 1.80 | $350.00 | $630.00 |
| AUG-30-18 | SA | Correspondence with Co Counsel regarding upcoming trial and mediation, damage model and client concerns. | 0.30 | $350.00 | $105.00 |
| AUG-31-18 | CRM | Travel to/from and participation in mediation (4.5); Review of Findings of Fact and Conclusions of Law (1); Preparation of cross examination of Bridges (4); Initial preparation of cross examination of Hardcastle (2). | 11.50 | $425.00 | $4,887.50 |
| AUG-31-18 | RKM | Finalize Conclusions of Law for trial (2.3); | 2.30 | $350.00 | $805.00 |
| SEP-01-18 | CRM | Preparation of materials for trial including trial notebook (1.5). Review of all exhibits to determine admissibility in bench trial vs jury trial (1.25). Continued preparation of cross examination of Bridges and Hardcastle (2.5). | 5.25 | $425.00 | $2,231.25 |
| SEP-01-18 | Paralegal | Prepare exhibit books for trial (1.2); | 1.20 | $110.00 | $132.00 |
| SEP-02-18 | CRM | Travel to Midland for trial. | 5.00 | $425.00 | $2,125.00 |
| SEP-02-18 | CRM | Preparation of exhibits to be used on computer screen at trial (2). Preparation of opening statement(1). | 3.00 | $425.00 | $1,275.00 |
| SEP-02-18 | CRM | Travel adjustment (reduced travel by 50%). | -2.50 | $425.00 | ($1,062.50) |
| SEP-03-18 | CRM | Continued preparation for trial (2.0). Meeting with clients to discuss testimony (3.5); Preparation of cross examination; opening statement and exhibits (3.0) | 8.50 | $425.00 | $3,612.50 |
| SEP-04-18 | CRM | Participation in trial (10.25). | 10.25 | $425.00 | $4,356.25 |
| SEP-04-18 | CRM | Return travel to Dallas after trial. | 5.00 | $425.00 | $2,125.00 |
| SEP-04-18 | CRM | Travel adjustment (reduced travel by 50%). | -2.50 | $425.00 | ($1,062.50) |

STATEMENT NUMBER: 277

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|
| DEC-10-18 | RKM | Review Plaintiff's original Findings of Fact and Conclusions of Law prepared for trial in order to review transcript to drop cites into the Trial Brief and begin reading transcript and dropping cites into Trial Brief (3.3); | 3.30 | $350.00 | $1,155.00 |
| DEC-11-18 | RKM | Continue reading transcript and dropping cites into Trial Brief to complete same (1.1); | 1.10 | $350.00 | $385.00 |
| DEC-13-18 | RKM | Continue reading transcript and dropping cites into Trial Brief to complete same (1.3); | 1.30 | $350.00 | $455.00 |
| DEC-14-18 | RKM | Continue reading transcript and dropping cites into Trial Brief to complete same (.7); | 0.70 | $350.00 | $245.00 |
| DEC-17-18 | RKM | Continue reading transcript and dropping cites into Trial Brief to complete same (5.8); | 5.80 | $350.00 | $2,030.00 |
| DEC-18-18 | RKM | Continue research and reading transcript and dropping cites from there and case law cites into Trial Brief to complete same (8.6); | 8.60 | $350.00 | $3,010.00 |
| DEC-18-18 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -2.00 | $350.00 | ($700.00) |
| DEC-19-18 | RKM | Continue research and reading transcript and dropping cites from there and case law cites into Trial Brief to complete same (10.9); | 10.90 | $350.00 | $3,815.00 |
| DEC-19-18 | RKM | Time adjustment for billing purposes and exercising discretion in amount submitted to the Court. | -2.00 | $350.00 | ($700.00) |
| DEC-20-18 | CRM | Preparation for argument section of post trial brief. | 4.00 | $425.00 | $1,700.00 |
| DEC-20-18 | RKM | Continue revisions to Post Trial Brief to complete same (5.8); | 5.80 | $350.00 | $2,030.00 |
| DEC-21-18 | CRM | Final review of and filing post trial brief. | 1.00 | $425.00 | $425.00 |
| DEC-21-18 | RKM | Final revisions to Post Trial Brief to complete same (2.8); | 2.80 | $350.00 | $980.00 |
| FEB-28-19 | CRM | Review of Fifth Circuit decision in Parrish. | 1.00 | $425.00 | $425.00 |
| MAR-01-19 | CRM | Preparation of draft of notice of Supplemental Authority. | 1.00 | $425.00 | $425.00 |
| MAR-01-19 | RKM | Review new Fifth Circuit Case (Premier) and analyze based on our previous briefing for supplemental briefing (.8); | 0.80 | $350.00 | $280.00 |

STATEMENT NUMBER: 277

| DATE | ATTORNEY | DESCRIPTION | HOURS | RATE | AMOUNT |
|---|---|---|---|---|---|
| MAR-03-19 | RKM | Finalize Supplemental Brief for filing (.4): | 0.40 | $350.00 | $140.00 |
| MAR-11-19 | RKM | Read order granting judgment in Plaintiffs favor and begin preparation of Attorney Fees Motion and research law in Western District re Fees (.6): | 0.60 | $350.00 | $210.00 |
| MAR-11-19 | SA | Receipt and Review of Court's Ruling. | 0.40 | $350.00 | $140.00 |
| MAR-12-19 | RKM | Continue research of law in Western District re Attorney Fees for Attorney Fees Motion and draft Miltenberger's Declaration in support of same (3.6); | 3.60 | $350.00 | $1,260.00 |
| MAR-13-19 | RKM | Continue draft of Miltenberger's Declaration in support of Attorney Fees Motion and begin draft of Attorney Fees Motion (5.5); | 5.50 | $350.00 | $1,925.00 |
| MAR-14-19 | RKM | Continue draft of Attorney Fees Motion (1.7); | 1.70 | $350.00 | $595.00 |
| MAR-19-19 | CRM | Emails and phone conversation with Dustin Paschal re attorneys fees and possible appeal. | 0.25 | $425.00 | $106.25 |
| MAR-19-19 | RKM | Continue draft of Attorney Fees Motion (.8); | 0.80 | $350.00 | $280.00 |
| MAR-21-19 | CRM | Review of email from Defendant's counsel regarding Plaintiffs' motion for attorneys' fees and research regarding issues raised by same. | 1.25 | $425.00 | $531.25 |
| MAR-21-19 | RKM | Continue research for and continue draft of Attorney Fees Motion (4.0); | 4.00 | $350.00 | $1,400.00 |
| MAR-24-19 | RKM | Revisions to draft of motion for attorneys' fees based on meet and confer with Defendant's counsel and issues raised in same. | 1.00 | $350.00 | $350.00 |
| | | Total amount of this statement | | | $145,964.25 |

| MESSAGE |
|---|
| I appreciate the opportunity to help you! |

# EXHIBIT A-7

Hobbs v Petroplex Expenses                                                3/26/2019

| Date | Client Name | Expense Type | Expense Description | Expense Amount |
|---|---|---|---|---|
| 2/9/2017 | Joseph Hobbs | Filing Fee | Filing Fee for Complaint | $ 400.00 |
| 2/9/2017 | Joseph Hobbs | Filing Fee | Filing Fee for Pro Hac Vice | No Charge |
| 2/9/2017 | Joseph Hobbs | Postage | Postage for mailing complaint to Court. | $ 7.10 |
| 4/24/2017 | Joseph Hobbs | Postage | Mailing of Notice to 44 potential plaintiffs ($1.19 per first class mail large envelope) with stamped return envelope ($.49) = $1.68 per potential plaintiff | No Charge |
| 10/25/2017 | Joseph Hobbs | Postage | Certified mail to non-responding plaintiffs | No Charge |
| 2/1/2018 | Joseph Hobbs | Postage | Postage- Certified Mail RRR - to Five Plaintiffs regarding order to answer discovery or be dismissed | No Charge |
| 2/9/2018 | Joseph Hobbs | Air Fare | Airfare to Midland for depositions of Plaintiffs. | $ 500.95 |
| 2/11/2018 | Joseph Hobbs | Uber | Midland airport to hotel for depositions of Plaintiffs. | $ 18.76 |
| 2/12/2018 | Joseph Hobbs | Meals | Dinner at deposition of Plaintiffs. | $ 18.11 |
| 2/13/2018 | Joseph Hobbs | Hotel | Hampton Inn in Midland for depositions of Plaintiffs. | $ 436.62 |
| 2/13/2018 | Joseph Hobbs | Uber | Lyft hotel to airport in Midland for depositions of Plaintiffs. | $ 22.04 |
| 2/13/2018 | Joseph Hobbs | Parking | Parking at Love Field for trip to Midland for depositions of Plaintiffs. | $ 36.00 |
| 2/13/2018 | Joseph Hobbs | Mileage | Travel to and from airport for Plaintiffs' depositions. | $ 22.40 |
| 4/18/2018 | Joseph Hobbs | Air Fare | Airfare to Midland for depositions of Company witnesses. | $ 451.96 |
| 4/20/2018 | Joseph Hobbs | Hotel | Hotel in Odessa for depositions of Company witnesses. | $ 154.51 |
| 4/20/2018 | Joseph Hobbs | Car Rental | Rent car in Midland for depositions of Company witnesses. | $ 115.87 |
| 5/16/2018 | Joseph Hobbs | Postage | Overnight Fed Ex mailings to Sigler ($28.20) , Gonzales ($26.20), Alaniz ($26.20), Oroczo ($26.20), of letter advising dismissal of their cases and possible sanctions against them. | No Charge |
| 6/27/2018 | Joseph Hobbs | Miscellaneous | Payment of fees for discovery dispute. | No Charge |
| 7/22/2018 | Joseph Hobbs | Deposition Transcript | Deposition of Sam Hardcastle. | $ 1,054.83 |
| 7/22/2018 | Joseph Hobbs | Deposition Transcript | Deposition of TR Bridges. | $ 1,674.69 |
| 8/3/2018 | Joseph Hobbs | Uber | Midland airport to Courthouse | $ 24.76 |
| 8/3/2018 | Joseph Hobbs | Uber | Courthouse to Midland airport. | $ 21.04 |

Hobbs v Petroplex Expenses                                              3/26/2019

| Date | Client Name | Expense Type | Expense Description | Expense Amount |
|---|---|---|---|---|
| 8/3/2018 | Joseph Hobbs | Parking | Parking at Love Field | $ 17.00 |
| 8/3/2018 | Joseph Hobbs | Air Fare | Airfare for Pre-trial Hearing | $ 419.96 |
| 8/30/2018 | Joseph Hobbs | Mediation Fee | Mediation fee for Will Pryor. | $ 950.00 |
| 9/1/2018 | Joseph Hobbs | Copies | Copies of exhibits for exhibit books | $ 159.00 |
| 9/2/2018 | Joseph Hobbs | Meals | Sunday night dinner at trial. | $ 9.32 |
| 9/2/2018 | Joseph Hobbs | Mileage | Travel to Midland for trial. | $ 182.00 |
| 9/3/2018 | Joseph Hobbs | Miscellaneous | USB drive for Court for Exhibits at trial. | $ 15.11 |
| 9/3/2018 | Joseph Hobbs | Meals | Lunch at Trial Prep; HEB BBQ. | $ 16.83 |
| 9/4/2018 | Joseph Hobbs | Hotel | Hotel at trial. | $ 301.85 |
| 9/4/2018 | Joseph Hobbs | Mileage | Travel back from Midland after trial. | $ 182.00 |
| 12/7/2018 | Joseph Hobbs | Transcipt | Transcript of trial. | $ 704.52 |
|  |  |  |  |  |
| Total |  |  |  | $ 7,917.23 |

# EXHIBIT A-8

# STEVE ASHLEY

_____

Steve Ashley is currently Of Counsel with the Law Office of Kelly Morgan Dennis Corzine & Hansen, PC. Prior to joining this firm, he was in private practice in his own firm where his practice was primarily focused on Family Law matters, Personal Injury Defense involving fatalities, Oil Field litigation, Commercial Vehicle collisions, Toxic Torts, Premises Liability, Workers' Compensation, Insurance Law, General Negligence and General Civil Litigation. However, he also prides himself as being a full-service law firm to the community in which he serves and is also a Mediator in Civil and Family Law matters.

## EDUCATION

Steve graduated in 1986 from St. Mary's University Law School.  While at St. Mary's, he clerked for the U. S. attorney's Office, Western District of Texas.   As a law student he also participated in St. Mary University's legal assistance program and worked for private defense firms.  Steve concluded his undergraduate program at the University of Texas at Austin receiving a B.B.A. in Finance in 1983.

## EXPERIENCE

After graduation from law school, Steve began his private practice in insurance defense with the law firm of Shafer, Davis, Ashley, O'Leary & Stoker, in Odessa, Texas.  Steve credits his early legal experience and training to the fine senior lawyers who trained him both in the mechanics of practicing law as well as the courtesies that should be shown to all those working in the legal profession.   Steve also worked for a time with Grau & Bassett, later known as Grau, Ashley & Koen, as well as for a private drilling contractor learning the needs of the employer both from an insurance perspective as well as the services in which outside counsel should provide.

## STATE BAR INVOLVEMENT

Steve is a member of the State Bar of Texas and Served on the Board of Directors of the State Bar of Texas from 1995-1998. While serving on the Board of Directors, Steve was Vice-Chair of the State Bar of Texas Client Security Fund Committee, was on the State Bar of Texas Member Nominations and Elections Committee, and served as Chair of the State Bar of Texas Facilities & Equipment Committee.   Steve is a member of the Ector and Midland County Bar Associations, Past President of the Ector County Bar Association and Past President of the Ector County Young Lawyers Association.

**COMMUNITY INVOLVEMENT**

Steve has sat on the finance committee for the Girl Scouts of the Permian Basin, is a Past Director of the Odessa Boys Club of America and received awards from West Texas Legal Services including the Pro Bono Award in 2002, the Special Recognition award in 1995 and the Appreciation Award in 1996. Steve has served as President of the Cherokee Wildlife Association and is an active member of the First Presbyterian Church in Odessa having served as three terms as a Trustee and Ruling Elder and a Director for the Mo Ranch Men's Counsel. He currently serves on the Board for the Permian Basin Rehab Center and is a Life Member of the Texas Ex's Association.

**RESULTS**

Throughout his legal career, Steve has tried in excess of 100 civil jury trials as lead counsel in both State and Federal Courts. Steve has substantial and extensive trial experience in developing defenses and successfully defending the following types of cases:

Commercial Truck Fatalities
Commercial Litigation
Electrical Injuries/fatalities
Industrial Plant Injuries
Industrial Equipment Injuries
Workers' Compensation (Both A and B coverages)
Commercial Auto Collisions
Construction Injuries/fatalities
Oil Field Injuries/fatalities