**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| **JOSEPH HOBBS and DRAKE FEENEY,** | § | |
| **individually and on behalf of all others** | § | |
| **similarly situated,** | § | |
|                 *Plaintiffs*, | § | |
| | § | |
| **v.** | § | **MO:17-CV-00030-DC** |
| | § | |
| **PETROPLEX PIPE AND** | § | |
| **CONSTRUCTION, INC.,** | § | |
|                 *Defendant*. | § | |

### ORDER AWARDING PLAINTIFFS' ATTORNEY FEES

BEFORE THE COURT is Plaintiffs Joseph Hobbs and Drake Feeney's—individually and on behalf of all others similarly situated—Motion for Attorney Fees. (Doc. 120). On April 1, 2019, this Court signed a Final Judgment in Plaintiffs' favor. (Doc. 123). Pursuant to the Final Judgment, Plaintiffs were awarded a combined total of $50,800.00 in unpaid wages and $50,800.00 in liquidated damages. *Id.* Plaintiffs now request an award of $145,964.25 in attorney fees, $3,924.19 in expenses, and $3,993.04 in costs for a total award of $153,881.48. (Docs. 120, 122).

## I.    LEGAL STANDARD

A prevailing plaintiff is entitled to a reasonable award of attorney fees and costs under the Federal Labor Standards Act (FLSA). 29 U.S.C. § 216(b). There is a strong presumption that the lodestar figure represents reasonable attorney fees. *Perdue v. Kenny A.*, 559 U.S. 542, 553–54 (2010). The lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. *See Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003). The party seeking attorney fees bears the burden of establishing the number of hours expended through the presentation of adequately recorded time records as

evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court then uses this as a benchmark and excludes any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id*. The hours remaining are those reasonably expended. *Id*.

After calculating the lodestar, the Court may either: (1) accept the lodestar figure; or (2) decrease or enhance it based on the circumstances of the case, taking into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19. However, the lodestar is presumed to be reasonable and should only be modified in exceptional cases. *See Watkins*, 7 F.3d at 457.

## II.   DISCUSSION

There is no question that Plaintiffs are the prevailing parties entitled to a reasonable award of attorney fees pursuant to 29 U.S.C. § 216(b). Accordingly, the Court first determines the lodestar in this case.

### A.  Lodestar

#### 1.  *Reasonable Hourly Rate*

First, the Court will determine whether Plaintiffs' counsel's hourly rate is reasonable when compared to the prevailing rates for attorneys of similar skill and experience in the relevant market. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). This rate is usually established through affidavits of other attorneys practicing in the relevant community. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The relevant community refers to "the judicial district in which the litigation occurred," which, in this case, is the Western District of Texas, Midland/Odessa Division. *See Ramirez v. Lewis Energy Grp., L.P.*, 197 F. Supp. 3d 952, 956 (S.D. Tex. 2016).  However, "the district court is itself an expert in assessing these matters." *Davis v. Bd. of Sch. Comm'rs of Mobile Cty.*, 526 F.2d 865, 868 (5th Cir. 1976) (citing *Weeks v. S. Bell Tel. & Tel. Co.*, 467 F.2d 95, 98 (5th Cir. 1972) ("The court is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value.").

Plaintiffs' counsel billed an hourly rate of $425 for attorney Chris Miltenberger, $350 for attorneys Rebecca Miltenberger and Steve Ashley, and $110 for the work performed by their paralegal. (Doc. 120-1 at 11). The case was handled by The Law Office of Chris R. Miltenberger, PLLC, and attorney Steve Ashley and his firm Kelly, Morgan, Dennis, Corzine & Hansen, PC. *Id.* at 2.

Mr. Miltenberger has been in practice for approximately thirty-seven (37) years, mainly working on labor and employment law for twenty-six (26) years, including FLSA wage and hour violations. *Id.* at 3. Ms. Miltenberger, the second attorney working on the case, has been in practice for approximately thirty-six (36) years. *Id.* at 4. She has practiced in several areas of the law and has spent about eleven (11) years practicing employment law. *Id.* Finally, the third

3

attorney, Mr. Ashley, has been in practice for thirty-three (33) years, during which time he has handled a variety of civil matters.[1]

Mr. Miltenberger attests that he charges his fee-paying clients at least $500 per hour and that his hourly rate of $425 in this case is reasonable and in line with the hourly fee rate in the Western District of Texas for a lead lawyer with similar experience and expertise. *Id.* at 8. Mr. Miltenberger provided the affidavit of Holly Williams, another attorney who practices in the Western District of Texas, who attests that the rates of Mr. Miltenberger, Ms. Miltenberger, Mr. Ashley, and the paralegal are reasonable for legal professionals of similar experience and specialization. *Id.* at 9, 42. Ms. Williams explicitly stated that she has been practicing for approximately twenty-six (26) years and has been board certified in Labor and Employment Law by the Texas Board of Legal Specialization since the year 2000. *Id.* at 41. Ms. William's hourly rate for billable work is $425 per hour. *Id.*

Moreover, Mr. Miltenberger provided a chart detailing the attorney fees rate rulings in other employment cases within the Western District of Texas, expanding from 2009 through the present. *Id.* at  22. The most relevant case is *Roberts v. Brinkerhoff Inspection, Inc.*, a 2018 Title VII case in which this Court granted an unopposed motion for attorney fees with an hourly rate of $425. *Id.* at 23; *see also Roberts v. Brinkerhoff Inspection, Inc.*, No. 7:16-cv-00342-DC (W.D. Tex. Midland/Odessa June 22, 2018) (Doc. 86).

Defendant maintains that despite Plaintiffs and Ms. William's assertion that $425 per hour is a reasonable hourly rate for attorneys in the Midland/Odessa area, Plaintiffs' Odessa lawyer billed at an hourly rate of $350. (Doc. 124 at 3). Defendant further contends that the *Roberts* case is distinguishable because the motion for attorney fees in *Roberts* was unopposed.

---

1. His curriculum vitae lists the following as Mr. Ashley's primary focus: family matters, personal injury defense, oil field litigation, commercial vehicle collision, toxic torts, premises liability, workers' compensation, insurance law, general negligence, and general civil litigation. (Doc. 120-1 at 60).

*Id.* Instead, Defendants urge that the proper rate for all of Plaintiffs' attorneys is $295 per hour, which is the amount this Court previously awarded Defendant's counsel under Rule 37. *Id.* at 4. Defendant then states that the hourly rate should not exceed $350, relying on Plaintiffs' Odessa lawyer's hourly rate. *Id.*

The Court first notes that the *Roberts* case is distinguishable because the request and amount of attorney fees requested was not contested. Next, the Court's finding that a $295 per hour rate is reasonable for Mr. Simon, an attorney for Defendant in this case, does not signify, in view of the parties' distinguishable experience, that the Court should make the same determination as to Mr. Miltenberger, Ms. Miltenberger, or Mr. Ashley. Mr. Miltenberger obtained his license to practice law in 1982, Ms. Miltenberger in 1983, and Mr. Ashley in 1986. (Doc. 120-1 at 4, 16). Mr. Simon, on the other hand, was licensed in 2007. (Doc. 61-1 at 2). Further, Mr. Miltenberger has over twenty-six (26) years experience in labor and employment law. (Doc. 120-1 at 3). Mr. Simon has at most twelve (12) years experience in the same field.

Due to the parties' conflict of opinion, the Court turns to the State Bar of Texas Department of Research and Analysis Hourly Rate Report (Hourly Rate Report).[2] This Court and numerous courts in the Western District of Texas oftentimes rely and take judicial notice of the Hourly Rate Report. *See, e.g.*, *Rhodes v. Vandyke*, No. MO:17-CV-00114-DC, 2018 WL 2925133, at *2 (W.D. Tex. June 11, 2018) (reviewing the State Bar of Texas' 2015 Hourly Rate Fact Sheet); *see also I.W. by & through Karen K. v. Hardin-Jefferson Indep. Sch. Dist.*, No. 1:15-CV-332, 2017 WL 5644386, at *18 (E.D. Tex. Jan. 4, 2017) (same); *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 624 (W.D. Tex. 2015) ("Judges in the San Antonio Division regularly take judicial notice of the Rate Report."). The Hourly Rate Report details

---

2.   STATE   BAR   OF   TEXAS,   2015   HOURLY   FACT   SHEET   (2015), https://www.texasbar.com/AM/Template.cfm? Section=Demographic_and_Economic_Trends&Template=/CM/Cont entDisplay.cfm &ContentID=34182.

attorney hourly rates by years in practice, location, and type of practice. The most current Hourly Rate Report was published in 2016 and provides information on hourly rates charged in 2015 by Texas attorneys.[3]

Based on the latest report available, the Court finds that in 2015 the median hourly rate for attorneys of experience similar to that of Mr. Miltenberger, Ms. Miltenberger, and Mr. Ashley (over 25 years) was $300, the median hourly rate for attorneys practicing labor and employment law was $278, the median hourly rate for attorneys practicing in West Texas was $225, the median hourly rate for attorneys practicing labor and employment law in West Texas was $225, and, finally, the median hourly rate for attorneys practicing in West Texas with over 25 years of experience was $275. These rates are significantly lower than what was proposed by Plaintiffs and slightly lower than what was proposed by Defendant.

Although the Hourly Rate Report is relevant, the Court finds that Mr. Miltenberger is entitled to a higher rate due to his extensive experience in labor and employment law, primarily representing employees since 2012. Consequently, the Court finds that a reasonable rate for Mr. Miltenberger is $375 per hour. This figure represents an increase over the Hourly Rate Report due not only to Mr. Miltenberger's experience but also the age of the Hourly Rate Report and Mr. Miltenberger's status as lead attorney. For the same reasons, the Court finds that an hourly rate of $325 is reasonable for Ms. Miltenberger and Mr. Ashley.

Additionally, the State Bar of Texas provides a 2014 Hourly Rate table for paralegals.[4] According to the survey, the median hourly rate for a paralegal in West Texas was $95 in 2010

---

3. Plaintiffs filed an expert report from N. Shirlene Pearson, Ph.D., asking the Court to disregard the 2015 Hourly Fact Sheet on the basis that it is not reliable. Based on well-settled precedent in the Western District of Texas, the Court opines that the 2015 Hourly Fact Sheet is a proper basis for determining reasonable attorney fees.
4. STATE BAR OF TEXAS, 2014 PARALEGAL DIVISION COMPENSATION SURVEY 15 tbl. 17, https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=27563.

and raised to $104 in 2014. Considering the age of the Report, the Court opines $110 is a reasonable rate for a paralegal in West Texas.

### 2. *Time Reasonably Expended*

The next step in the lodestar analysis is to determine the number of hours reasonably expended on the litigation. As part of the reasonableness inquiry, the fee applicant has the burden of demonstrating the exercise of billing judgment. *Saizan*, 448 F.3d at 799.  Billing judgment refers to the exclusion of hours that are excessive, redundant, or unproductive. *Id*.  The remedy for lack of billing judgment is a reduction in hours "by a percentage intended to substitute for the exercise of billing judgment." *Id*.

Plaintiffs ask for a minimum 159.35 hours for Mr. Miltenberger's time, 207.15 hours for Ms. Miltenberger's time, 8.60 hours for Mr. Ashley's time, and 24.80 hours for the paralegal's time. (Doc. 120-1 at 11). Those hours amount to 399.9 total hours.

Defendant disputes the number of hours billed in this case, alleging that the Plaintiffs seek compensation for extraneous and unnecessary work. Specifically, Defendant argues that Plaintiffs should not be compensated for the hours they expended to potentially prosecute a collective action and their work related to former Plaintiff Bouman. (Doc. 124 at 4–8). Defendant also alleges that the hours exhausted on closing argument and the Motion for Fees are excessive and objects to all hours reported by Mr. Ashley. Finally, Defendant contends that the Court should reduce the attorney fees by one-third because Plaintiff Humphrey was not a prevailing party and Plaintiffs' counsel expended an equal amount of time litigating Plaintiff Humphrey's claim which this Court found was outside the statute of limitations.

i.  *Attorney Fees for Work Related to the Collective Action*

As noted previously, the party requesting fees bears the burden of establishing that they are entitled to an award and that they employed billing judgment by recording the reasonable hours consumed in the case and hourly rates and by writing off unproductive, excessive, or redundant hours. *See Kellstrom*, 50 F.3d at 324 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)); *see also Watkins*, 7 F.3d at 457 ("[T]he court should exclude all time that is excessive, duplicative, or inadequately documented."). Normally, a party "who is unsuccessful at a stage of litigation that was a necessary step to her [or his] ultimate victory is entitled to attorney's fees even for the unsuccessful stage." *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 626 (W.D. Tex. 2015) (quoting *Air Transp. Ass'n of Canada v. FAA*, 156 F.3d 1329, 1335 (D.C. Cir. 1998)). This is because the unsuccessful stage was necessary to ultimately prevailing on his or her claims and because it is rare when a prevailing party does not lose some battles before "winning the war." *Id.* ("Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war." (quoting *Air Transp. Ass'n Canada*, 156 F.3d at 1335). Several courts in the Western District of Texas refuse to deny time spent on motions that are "tied to advancing the course of litigation solely on the basis that the [p]laintiffs did not prevail on them." *Rodriguez v. Mech. Tech. Servs., Inc.*, No. 1:12-CV-710-DAE, 2015 WL 8362931, at *4 (W.D. Tex. Dec. 8, 2015) (citations omitted).

Defendant seeks to exclude time spent on conditionally certifying the class. (Doc. 124 at 5–6). This encompasses Plaintiffs' counsel's time spent on formulating the motion for certification and notice, including research associated with certification, the preparation of four declarations that were attached to the motion, drafting a reply brief, creating a list for notice to

potential plaintiffs, preparing notice documents, mailing notice, and preparing a list of opt-in plaintiffs with information regarding work dates. *Id.* Defendant reasons that because the only two prevailing Plaintiffs were already named Plaintiffs and not opt-ins, the conditional certification did not render a prevailing party or a prevailing claim and thus Plaintiffs should not recover for fees associated with their efforts to certify the class. *Id.* Plaintiffs generally assert that the motion to certify the collective action was successful and that it was tied to advancing the course of litigation, citing *Rodriguez v. Mechanical Technical Services* for support. (Doc. 127 at 5). For the reasons detailed below, the Court agrees with Defendant that time employed on certifying the collective action should be excluded.

First, the Court notes that although Plaintiffs cite to *Rodriguez* for the proposition that a prevailing party may recover attorney fees for time spent on motions on which they were not successful when such time is "tied to advancing the course of litigation," at no point do Plaintiffs explain how certifying the class was actually tied to advancing the course of this litigation. (Doc. 127 at 5–6). Courts that refused to deny compensation for work expended pursuing a collective action when the motion to certify was unsuccessful did so on the basis that the work was related and relevant to the plaintiffs' success. *See, e.g.*, *Alex*, 125 F. Supp. 3d at 626 (awarding attorney fees for time expended on pursuing a collective action even though the plaintiffs did not move for collective action certification because the identity of the other potential plaintiffs was relevant to plaintiff's claim); *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 (E.D. La. 2009) (refusing to deny fees even though the effort to certify the class was unsuccessful where the work performed during the collective action phase was essential to subsequent litigation); *see also Rodriguez*, 2015 WL 8362931, at *4 ("The Court will not deny time spent on motions that *were tied to advancing the course of litigation* solely on the

basis that the Plaintiffs did not prevail on them." (emphasis added) (citations omitted)). Plaintiffs fail to explain how the time exhausted on conditionally certifying the case at bar was relevant to the individual prevailing Plaintiffs' claims nor how it contributed to Plaintiffs' victory. Additionally, the Court finds persuasive that Defendant does not seek to exclude hours related to discovery during the conditional certification phase or other work that benefited the prevailing Plaintiffs.

Next, the Court recognizes that it granted the motion to conditionally certify the case as a collective action. Thus, in that context, Plaintiffs prevailed on the motion. Nonetheless, the Court reiterates that Plaintiffs have not shown that the success of Plaintiffs' claims was dependent on certification nor that Plaintiffs obtained a benefit from the opt-in plaintiffs. The Court opines that—considering that the degree of success obtained is the "most critical factor" in determining a fee award[5]—a reasonable fee award in relation to the results achieved requires the deduction of hours Plaintiffs' attorneys expended certifying the collective action. *See, e.g.*, *Clarke v. Ford Motor Co.*, No. 01-C-0961, 2006 WL 752902, at *8 (E.D. Wis. Mar. 21, 2006) ("I agree that plaintiff's lack of success on the class claims justifies a reduction in the award."); *Grochowski v. Ajet Const. Corp.*, No. 97 CIV. 6269 (NRB), 2002 WL 465272, at *5 (S.D.N.Y. Mar. 27, 2002) (reducing fees award, in part, "based on lack of success for half the original plaintiffs"); *see also Kalloo v. Unlimited Mech. Co. of NY*, 977 F. Supp. 2d 209, 213 (E.D.N.Y. 2013) (approving the omission of fees for the collective part of the action where "plaintiffs succeeded on their motion to certify a collective action… but… only the three named plaintiffs went forward").

According to Plaintiffs' records and Defendant's allegations, Plaintiffs' attorneys spent and are billing for the following hours in relation to collective action certification: Mr.

---

5. *See Volk v. Gonzalez*, 262 F.3d 528, 534 (5th Cir. 2001) (reiterating that the degree of success is "the most critical factor in determining the reasonableness of a fee award" (quoting *Farrar v. Hobby*, 506 U.S. 103, 121 (1992))).

Miltenberger 2; Ms. Miltenberger 21.2 (accounting for the two-hour time adjustment applied by Plaintiffs in exercising billing judgment); paralegal 3.3. Accordingly, the Court excludes those hours from the total reasonable hours spent on the case.

### ii.   *Fees Related to Former Plaintiff Bouman*

Defendant and Plaintiffs agree that Plaintiffs should not recover fees for efforts related to Bouman. (Docs. 124 at 6; 127 at 6 n.2). Accordingly, the Court deducts .75 hours expended by Mr. Miltenberger on behalf of Bouman.

### iii.   *Fees Related to Closing Argument & Motion for Fees*

Defendant contends that Plaintiffs' counsel employed an excessive amount of time preparing the written closing argument and the instant Motion for Attorney Fees. (Doc. 124 at 6–8). Namely, Defendant argues that spending 41.3 hours on the written closing argument, which is more than the amount of time Plaintiffs' counsel seeks in fees for preparation of trial testimony, trial notebooks, exhibits, opening statement, and Plaintiffs' counsel's participation in the one-day trial, is unreasonable. *Id.* at 7. Plaintiffs counter that the hours expended on closing argument and the instant Motion were necessary. (Doc. 127 at 6).

After a thorough assessment, the Court finds that Plaintiffs have failed to demonstrate the reasonableness of the 41.3 hours claimed for completing and filing their Post-Trial Brief. Plaintiff's Post-Trial Brief is composed of three main sections: (1) Plaintiffs' analysis of the evidence as it relates to their employee status and the relevant law and Plaintiffs' analysis as to the per diem issue; (2) Findings of Facts; and (3) Conclusions of Law. (*See generally* Doc. 115). Two of those sections are relatively similar to Plaintiffs' Proposed Findings of Fact and Conclusions of Law; a document Plaintiffs filed before trial and for which they also billed. (*Compare* Doc. 105, *with* Doc. 115; *see also* Doc. 120-1 at 10). In fact, the Conclusions of Law

section in the Post-Trial Brief had minimal edits. (*Compare* Doc. 105 at 18–46, *with* Doc. 115 at 45–71). Although Plaintiffs indicate that Plaintiffs' counsel spent most of their time supplementing the Post-Trial Brief's Findings of Fact section by citing the transcript of the trial (Docs. 120-1 at 11; 127 at 6), the Court believes the hours spent on this task are excessive. Plaintiffs' Findings of Fact section expands over twenty pages of the seventy-two-page Brief. Plaintiffs' counsel spent more time reading and citing the transcript of a one-day trial than they did developing their twenty-four-page argument. (*See* Doc. 120-1 at 11 (indicating 4 hours were spent on preparing the "argument section of post-trial brief")).

Consequently, the Court reduces the number hours consumed on preparing the Post-Trial Brief to thirty (30) hours, bearing in mind that Plaintiffs' counsel had already deducted four (4) hours for billing purposes. *See, e.g.*, *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 389 (S.D. Tex. 2016) ("The Court finds that, in light of the limited procedural history of this case and the billing summary submitted, the amount of attorney hours claimed—111.5—is excessive."); *Hayes v. Astrue*, No. 3:09-CV-2018-G BK, 2010 WL 5479611, at *2 (N.D. Tex. Dec. 3, 2010), *report and recommendation adopted*, No. 3:09-CV-2018-G BK, 2011 WL 9049 (N.D. Tex. Jan. 3, 2011) (reducing hours spent on a motion because "Plaintiff has failed to demonstrate the reasonableness" of those hours). Because Ms. Miltenberger worked on the Post-Trial Brief the majority of the time, the Court will exclude the 11.3 hours from Ms. Miltenberger's total hours.

As to the hours expended on the Motion for Attorney Fees, the Court finds only one entry duplicative. Otherwise, the hours are reasonable. *See, e.g.*, *Prater v. Commerce Equities Mgmt. Co., Inc.*, No. CIV.A. H-07-2349, 2008 WL 5140045, at *7 (S.D. Tex. Dec. 8, 2008) (finding 46.8 spent on a fee application excessive given the attorney's experience with FLSA cases but only reducing it to 30 hours). Specifically, the billing statement indicates that Mr. Ashley spent

.4 hours receiving and reviewing the Court's ruling and that Ms. Miltenberger spent part of .6 hours also reviewing the Court's Order.[6] (Doc. 120-1 at 12). Accordingly, the Court reduces the hours spent on the Motion for Attorney Fees by .4, the duplicative hours employed by Mr. Ashley to review the Court's ruling. *See, e.g.*, *Rouse*, 181 F. Supp. 3d at 389 (deducting hours for duplicative work when the billing records reflected that multiple attorneys had duplicated several tasks).

### iv.   *Fees for Mr. Ashley's Work*

In a footnote, Defendant contends that Plaintiffs should not recover for any hours expended by Mr. Ashley on the basis that Mr. Ashley's time occurred before a lawsuit was ever filed or consisted of "receiving and reviewing" work produced by Mr. Miltenberger and his firm. (Doc. 124 at 3 n.1). Upon reviewing Plaintiffs' billing statement, the Court finds Mr. Ashely spent time on tasks that were duplicative and unnecessary.

Mr. Ashley spent 4.7 hours speaking with Plaintiff Hobbs and Mr. Miltenberger regarding Plaintiff Hobbs's FLSA claim, investigating the factual circumstances surrounding the FLSA claim, and case logistics. (Doc. 120-1 at 44). The Court considers Mr. Ashley's investigative work necessary prior to filing suit. Moreover, Defendant does not point to caselaw indicating otherwise. (Doc. 124 at 3).

After Mr. Miltenberger prepared and filed Plaintiffs' Complaint, Mr. Ashley received and reviewed a copy of the Complaint. The Court finds that it was unnecessary for more than one attorney to review the Complaint, even if the attorneys, both representing the same party, work for different firms. Accordingly, the Court will reduce the 1.6 hours Mr. Ashley spent on

---

6. The billing statement indicates that Ms. Miltenberger utilized .6 hours to read the Court's Findings of Fact and Conclusions of Law, initiate the Motion for Attorney Fees, and to conduct research on fees in the Western District of Texas. (Doc. 120-1 at 55).

receiving and reviewing the Complaint, along with other tasks, to 1.2 hours. (Doc. 120-1 at 45). Such reduction reflects the time Mr. Ashley spent reviewing the Complaint. (Doc. 120-1 at 45).

For similar reasons, the Court also deducts one (1) hour from Mr. Ashley's total hours. This deduction is for time Mr. Ashley spent receiving, reviewing and approving the contingency fee agreement prepared by Mr. Miltenberger, the lead attorney in the case, receiving and reviewing Plaintiffs' deposition notices, and receiving and reviewing the Court's Order denying summary judgment. The Court finds it redundant for Mr. Ashley to review the agreement and excessive for Plaintiffs to bill for such work given that Mr. Miltenberger, the lead attorney, had prepared the document and that Plaintiffs do not explain the reasonableness of the entry. Likewise, it was unnecessary for Mr. Ashley to review the deposition notices when Mr. Miltenberger, not Mr. Ashley, prepared the materials for Plaintiffs' depositions, met with Plaintiffs to prepare them for the depositions, and participated in the depositions. (Doc. 120-1 at 49). Finally, Plaintiffs failed to explain the reasonableness of the time Mr. Ashley spent on reviewing the Court's Order denying summary judgment. Given Mr. Ashley's rather minimal involvement in conducting research and drafting motions, responses, and other documents, the Court finds Mr. Ashley's time spent on reading the Court's Order unreasonable and unnecessary.

As to the remaining hours expended by Mr. Ashley, the Court finds them reasonable. Thus, the Court deducts a total of 1.4 hours from Mr. Ashley's total hours spent on this case on the basis that said hours were duplicative and unnecessary.

*     *     *

After subtracting the unreasonable hours and considering the time adjustment made by Plaintiffs, the compensable hours are:

1. **Mr. Miltenberger: 156.6** (159.35 hours requested minus 2 hours for unreasonable time spent on collective action certification minus .75 hours spent on behalf of Mr. Bouman);

2. **Ms. Miltenberger: 174.65** (207.15 hours requested minus 21.2 hours for unreasonable time spent on collective action certification minus 11.3 hours for excessive time spent on the Post-Trial Brief);

3. **Mr. Ashley: 6.8** (8.6 hours requested minus 1.8 hours spent conducting duplicative and unnecessary work);

4. **Paralegal: 21.5** (24.8 hours requested minus 3.3 hours for unreasonable time spent on collective action certification).

### 3. *Lodestar Total*

For the above reasons, the Court finds the appropriate lodestar is as follows:

| | Hours Requested | Hours Deducted | Total Reasonable Hours | Reasonable Hourly Rate | Lodestar Total (Hours x Rate) |
|---|---|---|---|---|---|
| Mr. Miltenberger | 159.35 | 2.75 | 156.6 | $375.00 | $58,725.00 |
| Ms. Miltenberger | 207.15 | 32.5 | 174.65 | $325.00 | $56,761.25 |
| Mr. Ashley | 8.6 | 1.8 | 6.8 | $325.00 | $2,210.00 |
| Paralegal | 24.8 | 3.3 | 21.5 | $110.00 | $2,365.00 |
| **Total:** | | | | | **$120,061.00** |

### B. *Johnson* Factors

Next, the Court turns to the *Johnson* factors to decide whether a departure from the lodestar figure is warranted in this case. *Kellstrom*, 50 F.3d at 324, 329. In setting the lodestar, the Court considered some of the *Johnson* factors, such as the time and labor required in this FLSA action, the experience and ability of Plaintiffs' counsel, the customary fee in West Texas, and the award in similar cases. Plaintiffs do not request an upward adjustment based on the *Johnson* factors. Defendant, on the other hand, urges the Court to reduce attorney fees by one-third to account for the work Plaintiffs' counsel accomplished for Plaintiff Benjamin Humphrey,

a non-prevailing party. (Doc. 124 at 2–3). Defendant argues that because Plaintiffs' claims "were inextricably intertwined in that they all had the same claims against Defendant… all discovery, motion practice, and trial efforts were expended equally on behalf of all three Plaintiffs." *Id.* Thus, Plaintiffs' fee award should be reduced by one-third for all time on or after February 20, 2017, when Plaintiff Humphrey entered the case.

Plaintiffs counter that where the legal services are inextricably intertwined, "Texas law recognizes that there is no duty to segregate fees." (Doc. 127 at 2). Further, the argue that because the discovery, motion practice, and trial efforts expended on behalf of all Plaintiffs, including Humphrey, were crucial to Plaintiffs' claims, such services would have been nonetheless incurred on behalf of the prevailing Plaintiffs. *Id.* at 3.

The Court notes that Plaintiffs' reliance on *Navigant Consulting, Inc. v. Wilkinson* is misplaced. 508 F.3d 277, 298 (5th Cir. 2007). In that case, the Fifth Circuit turned to Texas law because the plaintiff's fee award was justified under the Texas Civil Practice & Remedies Code. *Id.* In the instant case, Plaintiffs are entitled to attorney fees under the FLSA. Nonetheless, the Court agrees with Plaintiffs that the lodestar should not be reduced by one-third as urged by Defendant.

Plaintiffs' counsel may not recover fees for non-prevailing plaintiffs, such as Plaintiff Humphrey. *See Gurule v. Land Guardian, Inc.*, No. 4:15-CV-03487, 2017 WL 6761821, at *3 (S.D. Tex. Oct. 24, 2017), *aff'd*, 912 F.3d 252 (5th Cir. 2018) (citing *Ramirez v. Lewis Energy Grp., L.P.*, 197 F. Supp. 3d 952, 958 (S.D. Tex. 2016)). However, there is no precise rule or formula in deciding how to calculate attorney fees where some claims failed. *Id.* (citing *Hensley*, 461 U.S. at 436–37). In *Gurule*, the district court made a 29.1 percent reduction in the lodestar in order to account for the time plaintiffs' counsel spent representing two non-prevailing plaintiffs.

*Id.* Relevantly, the billing entries, in that case, referred only to the non-prevailing plaintiffs. *Id.* After reviewing the billing entries made by Plaintiffs' counsel, the Court finds that, unlike *Gurule*, the entries in Plaintiffs' counsel's billing statement were made on behalf of all three Plaintiffs, except for the deposition of Plaintiff Humphrey. (*See generally* Doc. 120-1). However, Plaintiff Humphrey's deposition statements were relevant and utilized by Plaintiffs in making their summary judgment arguments.

Finally, the Court notes that it has already reduced the fees awarded Plaintiffs due to their limited success. *Gurule*, 2017 WL 6761821, at *3 ("The district court may attempt to identify specific hours that should be eliminated, *or* it may simply reduce the award to account for the limited success." (emphasis added)); *see also Ramirez*, 197 F. Supp. 3d at 958 (eliminating hours spent drafting documents on behalf of plaintiffs that were dismissed). Namely, the Court identified specific hours spent on conditional certification because it did not result in a single prevailing plaintiff.

Accordingly, the Court will not depart from the lodestar amount.

### C. Costs

Finally, Defendant argues that Plaintiffs should not recover costs for postage, airfare, Uber fees, meals, hotels, parking, mileage, car rental fees, and mediation. (Doc. 124 at 8). Instead, Defendant suggests Plaintiffs recover only for what is outlined in the Bill of Costs. *Id.*

District courts may award only those costs enumerated in 28 U.S.C. § 1920 "absent explicit statutory or contractual authorization to the contrary." *Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001). Section 1920 lists the following costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and

witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920(1)–(6). The Fifth Circuit has also awarded travel expenses in Title VII and ADEA cases, reasoning that such expenses are allowed as part of attorney fees pursuant to Title VII[7] and the ADEA.[8] *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003) (acknowledging travel expenses are recoverable under Title VII and following sister circuits in allowing the recovery of out-of-pocket travel expenses as part of an attorney fee award under the ADEA). Accordingly, even if out-of-pocket expenses are not recoverable under § 1920, the Court may turn to "explicit statutory… authorization to the contrary" to award costs, such as statutory authorization under the FLSA. *Mota*, 261 F.3d at 529.

Under the FLSA, district courts "shall… allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Court opines that this includes "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Mota*, 261 F.3d at 529 (citations omitted); (*see also* Doc. 120-1 at 12). For this conclusion, the Court relies on the Fifth Circuit's finding that out-of-pocket expenses for travel are recoverable under the ADEA, agreeing with the Eighth Circuit and the Seventh Circuit. *West*, 330 F.3d at 396. The Court's reliance is premised

---

7. Title VII allows the recovery of "a reasonable attorney's fee as part of the costs." 42 U.S.C. § 2000e–5(k). The Fifth Circuit has allowed the recovery of out-of-pocket expenses in Title VII cases, "such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs." *Mota*, 261 F.3d at 529 ("This Court has interpreted the 'attorney's fee' allowed by Section 2000e–5(k) to include 'reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services….'" (citations omitted)).

8. The Fifth Circuit found that the ADEA, through reference to the FLSA's remedial provision, provides for reasonable attorney fees and thus it saw no reason why the district court should be precluded from awarding out-of-pocket expenses for travel under the ADEA. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 396 (5th Cir. 2003).

on the fact that the ADEA and the FLSA share a remedial scheme evinced by the ADEA's incorporation of the FLSA's enforcement and remedial provisions. 29 U.S.C. § 626(b) ("The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section."); *see also Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 74 (2000) (acknowledging the incorporation of the FLSA's enforcement provisions into the ADEA and explaining that the remedial options operate with the ADEA's enforcement provision).

In sum, travel expenses and postage are recoverable in this FLSA case as they represent reasonable out-of-pocket expenses incurred by Plaintiffs' counsel which are normally charged to fee-paying clients in the course of providing legal services. Further, the Court finds that the proposed out-of-pocket expenses are reasonable. *See, e.g.*, *Mata v. Caring for You Home Health, Inc.*, No. 7:13-CV-287, 2015 WL 12780641, at *3 (S.D. Tex. May 12, 2015) (allowing the recovery of "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client"); *see also Sales v. Bailey*, No. 2:12-CV-00056-SA-SAA, 2015 WL 1825060, at *6 (N.D. Miss. Apr. 22, 2015) (awarding reasonable out-of-pocket expenses under the FLSA). Mr. Miltenberger specifically asserts that the costs and expenses were "reasonably, necessarily and actually incurred in [the] litigation" and that they "are of the type that [counsel] normally charge[s] to fee-paying clients." (Doc. 120-1 at 12). As to the mediation fee, the Court declines to award costs relating to mediation. *Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt. Inc.*, 491 F.3d 266, 275 (5th Cir. 2007) (declining to award mediation fees under § 1920 and under ERISA); *see also Mota*, 261 F.3d at 530

(acknowledging that under Title VII "reasonable attorney's fees" include out-of-pocket expenses but finding mediation expenses are not "reasonable out-of-pocket expenses").

The Court recognizes that various district courts have refused to allow the recovery of costs not listed in § 1920. *See Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-00295, 2016 WL 4594945, at *14 (S.D. Tex. Sept. 2, 2016) ("Other courts in this circuit when faced with disputed requests for costs, including expenses that normally are passed on to a client by an attorney, routinely deny requests for items that are not listed in § 1920." (citing a list of cases)). Nonetheless, this Court sides with district courts that have allowed the recovery of expenses relying on statutory authorization under Title VII, the ADEA, and the FLSA.

The Court will allow Plaintiffs to recover for the items identified in their Bill of Costs, totaling $3,993.04. (Doc. 122). Additionally, having reviewed the expenses for postage and travel, the Court opines that they are reasonable and necessary for use in the case. (Doc. 120-1 at 57–58). Accordingly, Plaintiffs may recover **$3,993.04** in costs and **$2,974.19** in expenses ($3,924.19 total expenses requested minus $950.00 expended on mediation). *Id.*

### III.   CONCLUSION

Based on the foregoing discussion, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Attorney Fees. (Doc. 120).

The Court **ORDERS** that Plaintiffs are hereby awarded **$120,061.00** in attorney fees, **$3,993.04** in costs, and **$2,974.19** in expenses.

It is so **ORDERED**.

SIGNED this 23rd day of May, 2019.

DAVID  COUNTS

UNITED STATES DISTRICT JUDGE